Rita BOURGEOIS et al.,
Plaintiffs-Appellants,

v.

Jerald L. STEVENS et al.,
Defendants-Appellees.

No. 75–1473.

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1976.

Decided April 2, 1976.

R. Peter Anderson, Boston, Mass., with whom Charles R. Capace, Daniel S. Manning and Hollis Young, Boston, Mass., were on brief, for plaintiffs-appellants.

Donald K. Stern, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

■ This appeal raises the important question whether the Massachusetts Department of Welfare's plan to eliminate grants for certain nonrecurring needs from its Aid to Families with Dependent Children ("AFDC") program violates § 402(a)(23) of the Social Security Act, 42 U.S.C. § 602(a)(23).[1] The district court found that Massachusetts had granted benefits for nonrecurring needs to individuals who were otherwise eligible for AFDC assistance, but that it had not included nonrecurring needs in its formula for determining AFDC eligibility on the critical date, January 2, 1968. Since the district court interpreted § 402(a)(23) as permitting a state to discontinue a benefit program if that program satisfied needs that were not factors in the state's January 2, 1968 standard of AFDC eligibility, it concluded that Massachusetts could eliminate its system of grants consistent with the provisions of the Social Security Act.

■ Plaintiffs, who represent all the AFDC recipients and applicants in the Commonwealth of Massachusetts, instituted this action to enjoin the Commissioner of the Massachusetts Department of Welfare from terminating two programs that provided grants for household and emergency needs of AFDC recipients.[2] Although these programs were modified in 1970, they originated as part of a special needs program called "Non-Recurring Needs" which had been in effect since before January 2, 1968.[3] Although a major issue in this case is

---

1. In the district court, plaintiffs also contended that the elimination of the grants violated the Fourteenth Amendment. That claim provided the district court with jurisdiction, under 28 U.S.C. § 1343, over both the constitutional and the statutory issues in this case, since the district court concluded that this constitutional claim was substantial. *See Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Following the accepted practice, *see id.,* the single district judge considered the statutory claim before requesting the convening of a three-judge court pursuant to 28 U.S.C. § 2281. He then entered a final judgment on the statutory issue under F.R.Civ.P. 54(b), permitting this appeal on that issue alone.

2. These programs were entitled "Initial Needs" and "Hardship Situations". Initial Needs consisted of payments for basic items of furniture and household supplies. These were made during the first 30 days of AFDC eligibility. The Hardship Situations program consisted of payments to help recipients during specified emergency situations.

3. The Non-Recurring Needs program was consolidated into a system of flat grants in 1970. Although the district court made findings concerning the propriety of the consolidation, no issues arising from it are relevant to this appeal.

whether the Massachusetts practice was consistent with the governing state regulations, the uncontradicted competent evidence before the district court showed that, on January 2, 1968, the uniform statewide practice was for the Commonwealth to pay out money for nonrecurring needs only to individuals who were independently eligible for AFDC assistance and that Massachusetts had not considered the presence of nonrecurring needs in determining an individual's AFDC eligibility. This practice was contrary to the federal regulations requiring equality of treatment of AFDC applicants and recipients.[4] *See* 45 C.F.R. §§ 233.20(a)(1)(i) & (v).[5] Under this doctrine, a state must consider the same factors for purposes of paying out AFDC benefits as for determining AFDC eligibility.[6] By paying out benefits to recipients who had unsatisfied nonrecurring needs but failing to consider the presence of such needs in making eligibility determinations, Massachusetts violated the equality of treatment doctrine.

■ To place the complex issues presented by this case into perspective, it will be helpful briefly to describe the structure of the AFDC program and the place § 402(a)(23) occupies in it. The AFDC program is based upon a scheme of "cooperative federalism." *See New York Dept. of Social Services v. Dublino,* 413 U.S. 405, 413, 93 S.Ct. 2507, 2512, 37 L.Ed.2d 688, 694 (1973); *Dandrige v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491, 498 (1970); *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118, 1126

(1967). It is administered by the states but is largely funded by the federal government on a matching funds basis. Although participation in the program is voluntary on the part of the states, those which participate must, under the Supremacy Clause, comply with the terms of the applicable federal legislation and regulations. *See King v. Smith, supra* at 333 n. 34, 88 S.Ct. at 2141, 20 L.Ed.2d at 1134. Under the terms of the federal law, the states have had broad discretion in determining the level of benefits they pay eligible recipients. *See Rosado v. Wyman,* 397 U.S. 397, 408–09, 90 S.Ct. 1207, 1215–16, 25 L.Ed.2d 442, 453–54 (1970).

■ There are two basic considerations in determining the benefits a state will pay. The first of these, *"the standard of need",* is the criterion of eligibility for welfare benefits. It is the level of personal income the state believes is necessary to maintain a hypothetical family at a subsistence level. *See Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). The standard of need can vary from applicant to applicant depending upon factors such as family size, living arrangements, and individual circumstances. A principal issue in this case is whether the factor of nonrecurring needs was a component of Massachusetts' 1968 standard of need. Historically, the determination of the elements and amount of a state's standard of need has been a matter of state prerogative. *See Smith v. King, supra,* 392 U.S. at 318–19 & n. 14, 88 S.Ct. at 2133–34, 20 L.Ed.2d at 1126, 1127; *National Welfare Rights Or-*

---

**4.** The 1968 Massachusetts practice also violated the federal regulations then in effect by making payments for these needs to the vendor rather than to the recipient.

**5.** In reaching this conclusion, we are relying heavily upon the views of the Department of Health, Education, and Welfare ("HEW"). When the issue is the application of HEW regulations to specific state practices, its expertise is self-evident. *See New York Dept. of Social Services v. Dublino,* 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688, 699 (1973).

**6.** Massachusetts was not reimbursed by the federal government for the money it paid out for nonrecurring needs. After this action was

filed, defendants instituted a third party action against HEW on the theory that, if the district court were to find for plaintiffs, HEW would owe Massachusetts federal reimbursement for the money paid out in the non-recurring needs program. The district court's judgment for defendants disposed of the third party complaint and it was dismissed. Because of HEW's status as a party to this suit, the district court received the benefit of HEW's views on the issues presented, a highly desirable state of affairs. *See Rosado v. Wyman,* 397 U.S. 397, 406–07, 90 S.Ct. 1207, 1214–15, 25 L.Ed.2d 442, 452 (1970).

*ganization v. Mathews,* —— F.2d ——, —————— (D.C.Cir.1976). The second is the *level of benefits* that will be paid. For a particular individual, the level of benefits will be based on that individual's "actual need": that is, the difference between the standard of need and the amount of income available to the individual. A state need not provide benefits that are equal to actual need. It may choose to satisfy only a percentage of it or a percentage subject to a dollar maximum. *See Rosado v. Wyman, supra,* 397 U.S. at 408–09, 90 S.Ct. at 1215–16, 25 L.Ed.2d at 453–54.

Section 402(a)(23), which Congress enacted in 1968, effected a modest encroachment on the states' traditional discretion to determine the needs of AFDC applicants and recipients. It provided:

> "[The states shall] provide that by July 1, 1969, the amounts used to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted."

In *Rosado v. Wyman, supra,* the Supreme Court construed the first clause in § 402(a)(23) as requiring all participating states, by July 1, 1969, to make a one time only cost of living adjustment in its standard of need and as prohibiting the states from diminishing the content of its standard of need below that which was in effect on January 2, 1968, the date the statute was passed.[7] Under the Court's interpretation, the states remained free to reduce the level of AFDC benefits they paid so long as they did so without reducing the content of their adjusted standard of need. Although the Court recognized that this statute provided no protection against reduced benefits, it noted that the provision accomplished the "modest" objective of "prodding" the states in the "preferred direction" of increasing the level of benefits and making them closer to actual need. The prohibition of any diminution in the standard of need has the effect of requiring the states to continue to accept the responsibility for those individuals whose income falls below the adjusted standard and of forcing those states that cut back their benefits "to accept the political consequence of such a cutback and [bring] to light the true extent to which actual assistance falls short of the minimum acceptable." *Id.* at 413, 90 S.Ct. at 1218, 25 L.Ed.2d at 456.

Plaintiffs make essentially two arguments in support of their position that the district court erred in concluding that Massachusetts is not prohibited from eliminating its nonrecurring needs program. First, they contend that nonrecurring needs were, in fact, a component of the January 2, 1968 Massachusetts standard of need for purposes of § 402(a)(23). To support this proposition, plaintiffs rely principally upon the plain meaning of the Massachusetts Public Assistance Policy Manual ("MPAPM")—the regulations the Commonwealth submitted to HEW to obtain federal approval of its program for purposes of qualifying for federal funds—in effect on January 2, 1968. Plaintiffs argue that the only plausible interpretation of these regulations is that nonrecurring needs were an element of the eligibility standard. Noting that HEW shared this interpretation, they maintain that the district court's reliance on the actual Massachusetts practice is improper and, in any event, that its determination that nonrecurring needs were not part of the standard of need was erroneous.

Plaintiffs' second argument proceeds from the fact that Massachusetts' actual practice was contrary to the equality of treatment requirement of the federal regu-

---

**7.** The second, and final, clause in § 402(a)(23) requires proportionate adjustments of "any maximums that the State imposes on the amount of aid paid to families". Whether "maximums" refers to ceilings placed on the cost of items included in the standard of need, *see Houston Welfare Rights Org. v. Vowell,* 391 F.Supp. 223, 228–30 (S.D.Tex.1975), rather than to dollar maximums placed on the level of benefits, *see Johnson v. White,* 528 F.2d 1228, 1234, n. 6 (2d Cir. Nov. 28, 1975) (Friendly, J.), was not settled by *Rosado.* The scope of this second clause is not relevant to this appeal.

lations. They submit, in essence, that § 402(a)(23) requires that federal courts remedy this violation of HEW policy by conclusively presuming that nonrecurring needs were a component of the January 2, 1968 Massachusetts standard of need. We reject both arguments and we affirm.

## I. The Determination of the 1968 Standard of Need.

Although numerous cases have been decided under this statute, the case at bar, to our knowledge, is the first in which there has been a serious dispute over the content of a state's January 2, 1968 standard of need. Here the parties disagree not only over the legal principles a court should apply in determining the components of that standard, but also over the application of those principles to the facts of this case. In making its determination, the district court began by considering the "plain meaning" of MPAPM in light of the interpretations of the regulations by state and federal officials.[8] It found them ambiguous. Next, it considered the evidence of the actual Massachusetts practice, which was consistent with one interpretation of the regulations, and, in effect, considered this practice determinative. Plaintiffs now argue that the district court's conclusion that the regulations were ambiguous was erroneous and that, when HEW's views were known, it was improper to give any weight, much less conclusive weight, to the evidence of the actual statewide practice. Notably, the parties' disagreement over the legal standard to be applied in making the standard of need determination is narrow. Both sides assume that the regulations are the primary source to be examined. The disagreement is over the permissible aids to their interpretation and the weight that can be given to them under § 402(a)(23).

■ The first question is whether the district court's conclusion that the MPAPM was ambiguous was erroneous. Both plaintiffs and HEW interpreted the regulations to include nonrecurring needs in the eligibility formula.[9] They base this interpretation upon the fact that the item nonrecurring needs appears as the third item in ch. IV § A of the regulations, which is entitled the "Standard Budget". Since the regulations define the Standard Budget as outlining "the items used in computing the needs of the individual", plaintiffs maintain that nonrecurring needs ipso facto were part of the standard of need. The district court took note of this reasoning, but thought the regulations were ambiguous since nonrecurring needs were not included in the formula set forth in ch. IV § D, which is entitled "Determinations of Assistance Grants— Special Situations". Plaintiffs maintain that the district court's reliance upon ch. IV § D was misplaced. That subchapter, they say, has nothing to do with determining AFDC eligibility, for it consists only of directions for computing the amount of *recurring* monthly assistance grants.

■ Our independent examination of the regulations persuades us that the district court's reliance on ch. IV § D was proper. Although the ultimate objective of this subchapter is to state the formula for computing the amount of the monthly assistance grants, the initial computation under it is simply a determination whether the appli-

---

8. Several HEW officials testified as to their interpretations of the regulations. The state's witness on the state officials' interpretation of the regulations was James T. McGrath, who had been the Assistant Director of Field Operations for the Department of Welfare in January, 1968, and who had served on the committee which drafted the regulations. Mr. McGrath testified that the regulations were consistent with the actual statewide practice.

9. Plaintiffs make much of the fact that Massachusetts appeared to acquiesce in HEW's interpretation of the regulations when it converted

to a flat grant system of administration in 1970. We reject any suggestion that the statements the state officials made in the course of negotiations with HEW can bind them for purposes of litigation under § 402(a)(23). The Massachusetts officials never expressly acquiesced in HEW's interpretation, and their conduct is fully consistent with the position that nonrecurring needs were not part of the January 2, 1968 standard of need and that they were included in the amounts that were averaged solely to avoid problems with the equality of treatment doctrine.

cant is in need under the eligibility standard. The omission of any reference to nonrecurring needs is necessarily significant. The specific provisions of the regulations, moreover, support this conclusion and strongly suggest that IV § D should have more than passing relevance in determining the content of the standard of need. The Introduction to ch. IV states that assistance plans, like IV § D, are necessary to determine whether an individual is in need. The definition of the Standard Budget corroborates this. It states not only that it is an outline of "the items included in computing [needs]" but also that the description of the items, "together with the Budget Item Cost Schedule which reflects the amounts allowed for each item constitutes the Standard Budget." Despite the circularity of this definition, it is clear that the amounts allowed for the items in IV § A are determined by the Budget Item Cost Schedule, which appears in IV § D. The failure of IV § D to contemplate making computations for nonrecurring needs at least suggests that those needs were not an element of the standard of need, despite their inclusion in IV § A.[10] The inclusion of nonrecurring needs in IV § A may simply have reflected the fact that, although the needs were not a component of the eligibility standard, they were recognized for some purposes and ought to be described in the manual.[11] Therefore, we agree with the district court's conclusion that, although the regulations can reasonably be interpreted to support plaintiffs, they can be interpreted otherwise and hence are ambiguous.

The second question before us is whether it was proper for the district court to give any weight to the actual statewide practice.

In arguing that it was not, plaintiffs in effect have stated a hierarchical theory of the factors of district court can permissibly consider in determining the standard of need. Plaintiffs believe the best evidence of the standard is the express terms of the regulations and that in doubtful cases the interpretations of them by the responsible HEW officials should be determinative. Actual practice, in their view, is both irrelevant under § 402(a)(23) and intrinsically unreliable since it may, for any number of reasons, deviate from the actual statewide standard.

We disagree that the regulations on their face and HEW's interpretation of them should be the sole relevant considerations in determining the content of a state's January 2, 1968 standard of need. Although plaintiffs' proposed rule would be the easiest for courts to administer and would serve the perhaps salutary purpose of warning states of the fiscally dangerous consequences of writing regulations that HEW misinterprets, we believe its adoption would be inconsistent with the limited objectives of § 402(a)(23). Apart from requiring a one time only cost of living increase, this statute does not purport to alter the content of the participating states' AFDC eligibility criteria. The statute operates on the standards of need actually in effect on January 2, 1968, whatever they were. We believe it would impermissibly broaden the impact of § 402(a)(23) if federal courts were to implement it in such a way that a participating state would hereafter be required to employ a higher standard of need than that actually in effect on the critical date in 1968.

10. Although plaintiffs do not argue this point, we feel constrained to note that there is an ambiguity in IV § D itself. Although, as plaintiffs note, IV § D plainly is designed to establish a formula for computing the amount of the recurring monthly grants of AFDC recipients—a calculation for which the presence of nonrecurring needs is clearly irrelevant—IV § D's express terms do not necessarily preclude the inclusion of nonrecurring needs in the computation. We recognize, however, as apparently do plaintiffs, that nonrecurring needs, as a matter of logical necessity, must be excluded from any computation of the amount of recurring monthly grants.

11. Chapter IV § A's provision that grants for nonrecurring needs be paid directly to the vendor supports this conclusion. It suggests that grants for nonrecurring needs were administered separately from the process of calculating benefits based on the difference between the standard of need and the income available to the recipient.

In a suit under § 402(a)(23), the district court's objective must be to determine the *actual* standard of need, not to arrive at an abstraction based upon the interpretations of individuals who were not involved with the particulars of the state program.[12] In determining the content of a state's 1968 standard of AFDC eligibility, therefore, a district court should not be confined to the regulations on their face or to HEW's interpretation of them, but should, to ensure an accurate determination of the *actual* statewide standard, consider all relevant and reliable evidence. The cases decided under § 402(a)(23) support this reasoning. In those cases in which the content of the statewide standard was an issue, the federal courts have not confined themselves to the factors plaintiffs maintain are critical. *See Rosado v. Wyman, supra,* 397 U.S. at 418–19, 90 S.Ct. at 1220–21, 25 L.Ed.2d at 458–59 (considering the views of the responsible state officials); *Roselli v. Affleck,* 373 F.Supp. 36, 42 & n. 5 (D.R.I.), *aff'd,* 508 F.2d 1277, 1281 & n. 3 (1st Cir. 1974) (considering interpretations of responsible state officials). *See also Johnson v. White,* 353 F.Supp. 69, 82–83 (D.Conn.1972), *rev'd on other grounds,* 528 F.2d 1228 (2d Cir. 1975) (suggesting that actual practice can establish that the actual statewide standard was higher than that enunciated in the regulations).

Under the circumstances of this case, we are satisfied that the evidence of the actual practice in Massachusetts on January 2, 1968 was reliable and was properly made determinative of the actual standard of need. We agree with plaintiffs to the extent that they suggest that there are circumstances in which the state's actual practice may deviate from its statewide standard of AFDC eligibility, *see Roselli v. Affleck, supra,* 373 F.Supp. at 42 n. 5 and that such evidence would be entitled to little weight.[13] However, it is not inevitable that evidence of actual practice is unreliable. The reliability of evidence of a state's actual practice depends upon both the character of the evidence presented and the nature of the issue concerning the content of the standard need. If the issue is the extent to which a state recognized a certain need in determining eligibility and if the evidence consisted of the practice of the individual caseworkers, the evidence might not reflect the true standard. *See id.* In the case at bar, however, the issue is not the extent to which Massachusetts recognized nonrecurring needs but whether it recognized them at all in making eligibility determinations. The evidence is not the conduct of caseworkers but the testimony of the state official with statewide responsibility for the administration of the state's AFDC program[14] and affidavits from sev-

12. To support their position, plaintiffs make much of the Supreme Court's statements that HEW's views are entitled to great weight because of their expertise in the administration of AFDC programs. *See New York Dept. of Social Services v. Dublino, supra,* 413 U.S. at 421, 93 S.Ct. at 2516, 37 L.Ed.2d at 699; *Rosado v. Wyman, supra,* 397 U.S. at 406–07, 90 S.Ct. at 1214–15, 25 L.Ed.2d at 452. Since the issue here is the content of the *actual* standard of need—a question which turns not on what HEW thinks Massachusetts should have been doing but rather on what it did—there is no reason to give any special weight to HEW's views. This case illustrates the point. Here the district court was unimpressed with the basis for the HEW officials' interpretation of the Massachusetts regulations. The official seemingly adopted their interpretation because they found it impossible to believe that a state could have operated an AFDC program in violation of their equality of treatment doctrine. Even if deference were in order, therefore, the

district court would have been justified in discounting HEW's views.

13. To the extent that plaintiffs read our decision on appeal in *Roselli v. Affleck, supra,* 508 F.2d at 1280, as standing for the proposition that actual practice is irrelevant under § 402(a)(23), they are in error. In *Roselli,* there was no serious dispute over the content of Rhode Island's standard of need. *See id.,* at 1281 & n. 3. The issue in the case was whether Rhode Island could convert to a flat grant system by calculating its consolidated standard of need on the basis of an actual practice which did not reflect the January 2, 1968 standard. It was such reliance on actual practice that we disapproved.

14. The state's principal witness McGrath, *see* note 8, *supra,* had been responsible for providing guidance and assistance to local welfare offices. He would have monthly meetings with

eral social worker supervisors. We can think of no better evidence of the actual statewide standard of need, and we conclude that, having implicitly found that the MPAPM was consistent with the practice, the district court acted properly in making the uniform statewide practice conclusive of the January 2, 1968 Massachusetts standard of need.

## II. The Significance of Massachusetts' Recognition of Nonrecurring Needs for Purposes of Benefits.

■ Although we uphold the district court's determination that nonrecurring needs were not part of the actual January 2, 1968 standard of AFDC eligibility, plaintiffs argue that nonrecurring needs should be, in effect, conclusively presumed to have been one of the components of the standard since they were recognized for purposes of setting the level of AFDC benefits. That practice violated HEW's equality of treatment doctrine, and plaintiffs maintain that § 402(a)(23) requires that this violation of the federal regulations be remedied by hereafter making nonrecurring needs a component of Massachusetts' standard of AFDC eligibility. For the reasons stated below, we decline to adopt this construction of § 402(a)(23).

■ Plaintiffs make two arguments in favor of their position. The first proceeds from the fact that Massachusetts had been violating a regulation promulgated by HEW. Plaintiffs argue that § 402(a)(23) does not permit the continuation of an unlawful scheme and state that, to prevent Massachusetts from profiting from its past wrong, Massachusetts must now incorporate nonrecurring needs into its eligibility criteria. We reject this contention. Although it is clear that a state's compliance with the updating requirement of § 402(a)(23) does not immunize it from having its welfare program attacked for otherwise being in violation of federal law, see

*Johnson v. White, supra*, 528 F.2d 1228, 1234–35, 1236 (Friendly, J.); *Roselli v. Affleck, supra*, 508 F.2d at 1282, the statute does not by its own force declare the prior practices illegal and, accordingly, it does not require that the past violations be remedied in any particular manner. In both *Roselli* and *Johnson*, the states' methods of calculating the actual need of AFDC applicants had included unlawful attribution of income formulas, *see* § 402(a)(7), 42 U.S.C. § 602(a)(7); *Van Lare v. Hurely*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). In each case, the only possible means of eliminating the noncompliance with federal law was to prohibit the states from continuing to employ the unlawful practice. Although the result in each case was an increase in the amount of the actual need of many AFDC applicants, § 402(a)(23) does not require that any illegal state practice be remedied in such a way that the amount of actual need a state recognizes is increased. Indeed, as we suggested earlier, such a construction of § 402(a)(23) would be inconsistent with its limited objectives since it would, in cases like the one at bar, result in increasing the content of a state's standard of need.

Here, the violation of federal law arose from the Massachusetts practice of treating AFDC recipients differently from applicants. The termination of the nonrecurring needs program eliminated the nonconformity with the equality of treatment requirement. Neither the equality of treatment doctrine nor any other provision in the Social Security Act requires that Massachusetts correct the violation by henceforth including nonrecurring needs in its standard of need. Accordingly, we reject plaintiffs' argument.

■ Plaintiffs' second contention relies not on the violation of HEW policy per se but rather on the presumed intent of Con-

---

regional welfare directors and would go to local offices three or four times each year to discuss individual problems. Mr. McGrath testified that the state's policy was not to consider nonrecurring needs in determining AFDC eligibility

and that his supervisor, the Director of Field Operations, shared his view. This uncontradicted evidence was properly taken as establishing the uniform statewide practice in January, 1968.

gress in passing § 402(a)(23). Plaintiffs suggest that Congress was aware of HEW's equality of treatment requirement, which dates back to the 1930's, when it passed § 402(a)(23), *cf. New York Dept. of Social Services v. Dublino, supra,* 413 U.S. at 420, 93 S.Ct. at 2516, 37 L.Ed.2d at 698, and that it must have assumed that all states recognized the same needs for purposes of setting the level of AFDC benefits as they did for purposes of determining AFDC eligibility. By prohibiting any diminution in the "amounts used to determine the needs of individuals", therefore, Congress could not have contemplated that a state would be free to eliminate entirely a program that satisfied a class of needs. To implement this presumed Congressional objective, plaintiffs suggest that § 402(a)(23) must operate to amend the standards of need of states like Massachusetts to include all needs for which the state paid out benefits,

whether they were part of the actual standard of need or not. The short answer to this suggestion is that § 402(a)(23) cannot, consistent with its narrow objectives, be interpreted to effect substantial increases in a state's standard of need. Even if Congress did assume that all states should be in conformity with the equality of treatment doctrine, there is no reason to believe that it wished to force states which were not in compliance hereafter to employ a higher standard of need. The normal means of bringing about compliance with this requirement is to give the state a choice of either increasing its standard of need to include the item that previously was recognized only for purposes of benefits or of eliminating the special benefit entirely.[15] There is absolutely no basis for the conclusion that Congress intended that § 402(a)(23) would take this choice away from the participating states.[16]

---

**15.** The procedural vehicle for eliminating any nonconformity with HEW regulations is normally for HEW to hold a conformity hearing pursuant to 42 U.S.C. §§ 304, 604, 1204, 1316, 1354, 1396c. If nonconformity is found to exist, the state will have to bring its program into compliance with federal law in order to continue to receive federal funds. As we noted earlier, Massachusetts eliminated its nonconformity by terminating the nonrecurring needs program.

**16.** A subtler statutory argument, which plaintiffs do not make, is simply that the first clause of § 402(a)(23) prohibits the elimination of any benefit program. The phrase "amounts used to determine the needs of individuals" would be construed as referring to any need recognized for any purpose. *Rosado's* failure to give this first clause this broader scope could be explained on the ground that the New York AFDC program in issue in that case fully complied with the equality of treatment doctrine. In cases where a state recognized different needs for purposes of setting the level of benefits than it did for eligibility purposes, *Rosado* presumably would not foreclose this broader interpretation.

There are several problems with this interpretation. Although the statute itself would not require that nonrecurring needs be hereafter included in the Massachusetts standard of need, the equality of treatment doctrine presumably would. Since we doubt that § 402(a)(23) was intended to effect any increase in the state's standard of need beyond requiring the one time only cost of living increase, we do not think the eventual result is

consistent with the statutes limited objectives and apparent deference to traditional state prerogatives.

Second, the nature of the fiscal burdens this interpretation would place on the participating states seems inconsistent with the cooperative federalism underpinnings of the AFDC program. Under this interpretation, § 402(a)(23) would operate on the benefit programs as such. Since *Rosado* leaves no doubt but that the states are free to reduce the level of their benefits, the question becomes what limitations there would be on the ability of a state like Massachusetts to reduce benefits for items such as nonrecurring needs. There are really only two options. The first is that there is no limit. Under this interpretation the statute would provide absolutely no protection since Massachusetts could eliminate the benefits for nonrecurring needs entirely. The second option is that Massachusetts must pay the same percentage of nonrecurring needs as it does actual need. This interpretation would require Massachusetts to place needs, which have never been part of its standard of need and for which they have not received federal matching funds, on the same budgetary footing as those needs which it regarded as necessary for subsistence and included in its standard of need. In view of the states' historical prerogative in determining which needs are necessary for subsistence and § 402(a)(23)'s limited nature, we decline to construe this section as imposing such obligations on the states. We think the interpretation of the first clause of the statute which is most consistent with the cooperative federalism underpinnings of the AFDC pro-

Since we agree with the district court's conclusion regarding both the content of the January 2, 1968 Massachusetts standard of need and the scope of § 402(a)(23), the judgment of the district court is affirmed.

*Affirmed.*

gram is that it operates only upon those items which the states regarded as so essential to be

components of their actual January 2, 1968 standards of need.