**Rosetta BURRELL, Plaintiff,**

**Valestine McNatt, Intervener,**

**v.**

**Nicholas NORTON, Individually and in his capacity as Commissioner of Welfare of the State of Connecticut.**

**Civ. No. H–148.**

United States District Court,
D. Connecticut.

Aug. 2, 1974.

Joseph D. Garrison, New Haven, Conn., for plaintiff.

James M. Higgins, Asst. Atty. Gen., East Hartford, Conn., Lorna M. Dwyer, Asst. Atty. Gen., Hartford, Conn., for defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

In this action plaintiffs challenge the constitutionality of § 5030(6) of the Connecticut Welfare Manual, Volume 1, which pertains to emergency assistance to welfare recipients in certain "catastrophic" circumstances. A cause of action is stated under 42 U.S.C. § 1983 and jurisdiction is proper under 28 U.S.C. § 1343(3). Plaintiffs seek declaratory and other relief, 28 U.S.C. §§ 2201, 2202, Fed.R.Civ.P. 57, but do not seek injunctive relief.[1]

The intervening plaintiff Valestine McNatt and the defendant Commissioner of Welfare have filed cross-motions for summary judgment. Fed.R.Civ.P. 56. Both agree that there is no genuine issue as to any material fact; each claims to be entitled to judgment as a matter of law.

## I. FACTS

The material facts alleged in the intervening plaintiff's complaint are admitted in the defendant's answer. The intervening plaintiff is a welfare recipient and' a resident of New Haven. On or about November 19, 1973, she entered the Connecticut Valley Hospital, leaving her apartment in New Haven unoccupied. Soon after she went into the hospital, she spoke on the telephone with a Ms. Morey, a social worker at the State Welfare Department and her mother's welfare caseworker. The intervening plaintiff asked Ms. Morey to arrange to have her furniture, furnishings and clothing placed in storage while she was in the hospital, as authorized by § 5030(5) of the Connecticut Welfare Manual, Volume 1.[2] On or about November 30, 1973, Ms. Morey called the intervening plaintiff in the hospital to tell her that all of her furniture, furnishings, and clothing except for three dresses, a bed, a refrigerator and a few other items had been stolen from her apartment. Ms. Morey had discovered this fact when she went to the apartment to make a list of items to be put into storage. In early January 1974, the intervening plaintiff requested of Ms. Morey[3] that the State Welfare Department replace her stolen furniture, in accordance with § 5030(6)(g) of the Connecticut Welfare Manual, Volume 1.[4] At

---

1. Since the plaintiffs have not asked for injunctive relief, a single judge may render decision in this case and there is no need to convene a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284. Whalen v. Heimann, 373 F.Supp. 353, 355 n. 3 (D.Conn.1974).

2. Section 5030(5) of the Connecticut Welfare Manual, Volume 1, provides:
   5. *Storage Charges*
   Storage charges will be paid on a temporary basis not to exceed three months for essential household equipment, furnishings or furniture when:
   a. The articles stores are essential to the recipient and the cost of storage does not exceed the cost of replacement.
   b. During a period of hospitalization or rehabilitation away from home or following an eviction it is necessary to store articles temporarily.

3. It does not appear in the record why the intervening plaintiff dealt with Ms. Morey rather than with her own caseworker. The defendant, however, does not raise any issue on that account and, indeed, it would appear to be irrelevant in terms of the issues presented by the complaint, in view of the defendant's sole reliance of his literal interpretation of the challenged regulation.

4. Section 5030(6)(g) of the Connecticut Welfare Manual, Volume 1, provides for the repair or replacement of furniture, furnish-

that time, Ms. Morey informed the intervening plaintiff that the Welfare Department could not supply replacement furniture.

Section 5030(6) of the Connecticut Welfare Manual, Volume 1, authorizes the provision of emergency services to welfare recipients under the circumstances of "a catastrophic event or an eviction." "A catastrophic event" is defined as "a situation that arises suddenly because of a natural disaster of a fire or flood over which the recipient has no control and there is a substantial destruction of food, shelter, clothing or household furnishings." The defendant admits that replacement items were not furnished to the intervening plaintiff because the furniture, furnishings, and clothing had not been destroyed through a "natural" catastrophe, *i.e.*, fire or flood, and that replacement furniture, furnishings, and clothing would have been provided pursuant to § 5030(6) had the loss been due to such "natural" causes. In the words of the complaint, as admitted by the defendant, "The sole reason for the Department's refusal to provide new furniture and furnishings for the plaintiff was that said items had been stolen, rather than destroyed by fire or flood."

## II. INTERVENING PLAINTIFF'S CONSTITUTIONAL CLAIMS

The narrow focus of the intervening plaintiff's complaint is that portion of § 5030(6) of the Connecticut Welfare Manual which limits the replacement of furniture, furnishings and clothing to a particular kind of "catastrophic event," *i.e.*, "a natural disaster of a fire or flood." The intervening plaintiff claims that the distinction established by the

provision—between losses due to "natural" catastrophe (for which replacement is authorized) and those resulting from other causes (for which replacement is denied)—is arbitrary and unreasonable and not rationally related to any valid purpose of the state welfare program, and therefore in violation of the Equal Protection Clause of the Fourteenth Amendment. She also alleges that the provision creates a conclusive presumption that loss of furniture, furnishings, or clothing by other than "natural" catastrophe occurs only through fault of the welfare recipient, thereby violating the Due Process Clause of the Fourteenth Amendment.

Situations warranting emergency assistance to welfare recipients are described in § 380.1 of the Connecticut Welfare Manual, Volume 1. The section entitled "Emergency Situations Requiring Urgent Assistance Payments" provides: "Assistance to a recipient to meet immediate and urgent need may be authorized if the emergency results from circumstances beyond the control of the individual." The *only* requirement for the provision of emergency assistance is that the immediate and urgent need results from circumstances beyond the control of the individual. Indeed, among the listed situations "which meet the criteria of immediate and urgent need" is the following:

5. Emergent need due to hospitalization of the supervising relative, fire, flood *or other catastrophic event.* (emphasis added)

The emergency assistance provisions are thus intended for all welfare recipients who suffer grievous loss through no fault of their own: § 380.1 clearly indi-

ings and appliances under certain emergency circumstances, to be discussed presently:

g. *Replacement of Furniture, Furnishings and Appliances*

If the damage done to any appliance, pieces of furniture or household furnishings can be corrected by repair, repair costs will be authorized which will restore an appliance or piece of furniture to a useful condition. If an item has been de-

stroyed or so severely damaged as to have to be replaced, authorization of a replacement of the needed items will be made. Departmental cost standards for Household Furnishings, Furniture, and Appliances will be used as a basis of authorization for an item replaced. The prevailing sales tax charged will be included in the amount provided.

cates that the circumstances for which emergency assistance is warranted are not limited to fire or flood.

With the exception of the single provision challenged herein, § 5030(6) of the Welfare Manual furthers this broad intention to provide emergency assistance to welfare recipients when great misfortune strikes without warning. Thus a catastrophic event within the meaning of the section is one which "arises suddenly," one "over which the recipient has no control and there is substantial destruction of food, shelter, clothing or household furnishings." To assist the recipient in coping with the severe hardship resulting from such occurrences, the section prescribes procedures for obtaining emergency housing [5] and authorizes all of the following: temporary accommodation in a hotel or motel until emergency housing can be secured; [6] replacement of linens, cooking utensils and dishes destroyed by the catastrophe; [7] rental payments for emergency housing; [8] payment for restaurant meals if the emergency housing lacks cooking facilities; [9] replacement of essential clothing, [10] and replacement of furniture, furnishings, and appliances.[11]

Within the context of the Welfare Manual's overall scheme of comprehensive provision of emergency assistance to welfare recipients in circumstances of disastrous loss, the denial of assistance by § 5030(6) to recipients who suffer such loss other than by fire or flood is an arbitrary exclusion from the class of those in desperate need of one category of recipient. By the defendant's own admission, two recipients may suffer identical losses of furniture, furnishings and clothing, yet under § 5030(6) the recipient who suffered the loss by rea-

son of fire or flood may have the items replaced, but the recipient who was the victim of thieves or vandals may not.[12] The regulation clearly does not comport with the intention of the state welfare program to provide assistance "to meet immediate and urgent need . . . if the emergency results from circumstances beyond the control of the individual." Connecticut Welfare Manual, Volume 1, § 380.1. Nor does § 5030(6) make any sense in terms of practical considerations and hard reality. Certainly it is irrelevant to the recipient herself whether her loss was sustained by theft or vandalism, on the one hand, or fire or flood, on the other: in either case she is faced with the same desperate circumstances as a result of her catastrophic loss. The instant case well illustrates this conundrum. It is undisputed that the intervening plaintiff suffered the loss of virtually all her possessions while she was in the hospital. The sole reason for the Welfare Department's refusal to replace the items was that they had been stolen, rather than destroyed by fire or flood. By conditioning emergency assistance on the occurrence of a particular *type* of catastrophe, rather than on the existence of immediate and ascertainable need by the recipient, § 5030(6) effectively discriminates against a class of recipients legitimately in need and ignores the basic purpose of the emergency assistance program. It is simply irrational to consider the intervening plaintiff less in need of emergency assistance because she was not the victim of a "natural" disaster, but, rather, one perpetrated by men. When one considers that the intervening plaintiff *would* have qualified for replacement furniture under §

5. Connecticut Welfare Manual, Volume 1, § 5030(6)(a), (b).

6. *Id.* § 5030(6)(a)(3).

7. *Id.* § 5030(6)(b).

8. *Id.* § 5030(6)(c).

9. *Id.* § 5030(6)(e).

10. *Id.* § 5030(6)(f).

11. *Id.* § 5030(6)(g); *see* footnote 3 *supra.*

12. Emergency replacement of needed items is not authorized in other sections of the Welfare Manual. In the chapter of Volume 1 of the Manual entitled "Need Requirements and the Assistance Payment," § 5010 provides that the monthly payment standard is to cover expenses for appliances, furniture and home furnishings, but does not include "replacement [of those items] needed as a result of a catastrophe."

5030(6) if the intruders had set fire to her apartment rather than simply carting her belongings away, the arbitrariness of the provision becomes manifest. Moreover, by specifying the sole and explicit circumstances in which emergency assistance is authorized, § 5030(6) locks needy recipients like the intervening plaintiff into the class of those not entitled to relief and prevents them from demonstrating the legitimacy of their claims.

■ The defendant takes the broad position at the outset that it is within the Welfare Department's discretion to determine how to allocate its limited resources; he maintains that the intervening plaintiff "is receiving her basic welfare payments and is merely quibbling over their level." While it is true that Welfare Department officials have broad discretion in effecting their "difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients," Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1163, 25 L.Ed.2d 491 (1970), welfare officials, like other state officers, may not establish classifications which are without basis in reason. "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L. Ed.2d 620 (1966). The issue in this case is neither the discretion of the welfare officials in operating the public assistance program nor the level of individual welfare payments to the intervening plaintiff; rather the issue is whether there is any rational basis for granting emergency assistance to some needy recipients while denying it to others who are similarly situated.

■ The defendant Commissioner of Welfare, in his brief and at the hearing on these motions, has suggested two rationales to justify the distinction between needy recipients drawn by § 5030(6). None of the suggested rationales supplies a rational basis for the Welfare Department's policy of providing emergency assistance to recipients who have suffered the loss of essential home furnishings by fire or flood yet denying it to recipients who have suffered the same loss by other means.

The defendant maintains that § 5030(6) encourages "careful management of recipients' homes and care for possessions." If such be the purpose of § 5030(6), however, the section is "under-inclusive" in that it conclusively excludes from emergency assistance needy recipients like the intervening plaintiff who *have* exercised careful management of their homes and possessions.[13] Conversely, § 5030(6) is "over-inclusive" in that it may benefit recipients whose homes and possessions are damaged by fires caused by their own negligence. More to the point, emergency welfare assistance is designed to provide relief "from circumstances beyond the control of the individual." In the instant case, there is no indication that any reasonable amount of "careful management" or "care" by the intervening plaintiff would have prevented her loss.

In addition, the defendant asserts (as he did most strenuously at the hearing on these motions) that § 5030(6) is a reasonable means for preventing fraudulent claims for replacement furnishings. Again, however, the regulation sweeps too broadly and constricts too narrowly. It is over-inclusive in that it allows what may be fraudulent claims from victims of fire or flood. It is under-inclusive in that it rejects all claims from victims of thieves or vandals, no matter how legitimate.

The Court therefore finds that § 5030(6) of the Connecticut Welfare

---

13. The defendant has made no allegation that the intervening plaintiff was negligent in managing her home or caring for her possessions. In her brief, the intervening plaintiff states that she "took reasonable care for her possessions by locking her apartment" when she went to the hospital.

Manual, Volume 1, by its exclusion from emergency assistance of otherwise needy welfare recipients solely because their dire circumstances are not the result of "a natural disaster of a fire or flood," fails to "rationally [further] some legitimate, articulated state interest," McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973), and therefore violates the Equal Protection Clause of the Fourteenth Amendment. This conclusion finds support in the Supreme Court's recent decision in Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). There the Court considered a provision of the Social Security Act under which illegitimate children of a disabled parent could qualify for disability insurance benefits only if they received support from or lived with the disabled parent prior to the parent's disability unless they were otherwise qualified under provisions not applicable to the case.[14] Children who qualified under such provisions were entitled to benefits without any showing that they were in fact dependent upon their disabled parent; the plaintiffs, on the other hand, illegitimate children born after the date of their wage earner-father's disability, were barred from receiving disability benefits without any opportunity to establish their entitlement thereto. The Court rejected the claim of the Secretary of Health, Education and Welfare that the absolute bar to disability benefits was necessary to prevent spurious claims:

"We recognize that the prevention of spurious claims is a legitimate governmental interest and that, dependency of illegitimates in appellants' subclass as defined under the federal statute, has not been legally established even though, as here, paternity has been acknowledged. As we have

noted, the Secretary maintains that the possibility that evidence of parentage or support may be fabricated is greater when the child is not born until after the wage earner has become entitled to benefits. It does not follow, however, that the blanket and conclusive exclusion of appellants' subclass of illegitimates is reasonably related to the prevention of spurious claims. Assuming that the appellants are in fact dependent on the claimant, it would not serve the purposes of the Act to conclusively deny them an opportunity to establish their dependency and their right to insurance benefits, and it would discriminate between the two subclasses of after-born illegitimate without any basis for the distinction since the potential for spurious claims is exactly the same as to both subclasses."

417 U.S. at 636, 94 S.Ct. at 2501. The Court noted that the challenged statutory provision was "over-inclusive" in that it benefited children who met the statutory qualifications but who were not dependent upon their disabled parent, and "under-inclusive" in that it conclusively excluded illegitimates who did not meet the statutory qualifications but who were, in fact, dependent upon their disabled parent. The Court concluded:

"Thus, for all that is shown on the record, the two classes of illegitimates stand on equal footing, and the potential for spurious claims is the same as to both; hence to conclusively deny one subclass benefits presumptively available to the other denies the former . . . equal protection of the law . . . ."

417 U.S. at 637, 94 S.Ct. at 2502. Similarly, welfare recipients like the intervening plaintiff who are victims of thieves or vandals "stand on equal footing" with victims of fire or flood, and

---

14. "Under the statute it is clear that illegitimate children born after the wage earner becomes disabled qualify for benefits if state law permits them to inherit from the wage earner, § 416(h)(2)(A); or if their illegitimacy results solely from for-

mal, nonobvious defects in their parents' ceremonial marriage, § 416(h)(2)(B); or if the child is legitimated in accordance with state law, § 402(d)(3)(A)."
417 U.S. at 634, 94 S.Ct. at 2501.

"to conclusively deny one subclass benefits presumptively available to the other denies the former . . . equal protection of the law."

Accordingly, the defendant's motion for summary judgment is denied and the intervening plaintiff's motion for summary judgment is granted to the following extent: this Court finds and declares that § 5030(6) of the Connecticut Welfare Manual, Volume 1, insofar as it limits emergency welfare assistance to recipients who are victims of "a natural disaster of a fire or flood," is unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[15]

So ordered.

15. The defendant properly notes as his Special Defense that any claim by the intervening plaintiff for damages sustained as a result of past enforcement of § 5030(6) by the Welfare Department, or for compensation for the loss of her furniture, clothing and other household items, is barred by the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 660, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, the defendant's assertion that Edelman v. Jordan deprives this Court of jurisdiction in this case and bars it from granting any relief whatsoever evidences a serious misreading of the caselaw and the Supreme Court opinion. This Court's granting of declaratory relief certainly does not constitute the imposition of "a liability which must be paid from public funds in the state treasury" which Edelman v. Jordan held was constitutionally prohibited. *Id.* The intervening plaintiff has not sought injunctive relief, but, assuming that she is still in need, there is nothing to prevent her, or, indeed, the plaintiff Rosetta Burrell, from applying now for emergency assistance, including replacement furniture and home furnishings.