**Rita INGERSON et al., Plaintiffs,**

v.

**Alexander E. SHARP II, et al., Defendants.**

Civ. A. No. 76–3255–S.

United States District Court,
D. Massachusetts.

Dec. 9, 1976.

R. Peter Anderson, Charles R. Capace, of Massachusetts Law Reform Institute, Boston, Mass., Alfred D. Ellis, Cambridge and Somerville Legal Services, Cambridge, Mass., Daniel S. Manning, Greater Boston Legal Services, Dorchester, Mass., Hollis Young, Greater Boston Legal Services, Boston, Mass., for plaintiffs.

Garrick F. Cole, Catherine A. White, Asst. Attys. Gen., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

This is a class action challenging two independent restrictions on the availability of relief under Massachusetts' Emergency Assistance Program. Plaintiffs complain that each restriction impermissibly conflicts with section 406(e) of the Social Security Act, 42 U.S.C. § 606(e), and thus is invalid under the supremacy clause and that each restriction offends the equal protection clause of the fourteenth amendment. Plaintiffs seek permanent injunctive and declaratory relief. A hearing on the merits was held on September 21, 1976.

Congress enacted section 606(e) as part of its cooperative effort with the states to alleviate the condition of needy children. Participation by a state is voluntary, but the federal government reimburses fifty percent of a state's expenditures only if the state plan meets federal requirements. 42 U.S.C. § 603(a)(5). In general, section 606(e)

> authorizes emergency assistance to a needy child under 21, living with relatives specified in 42 U.S.C. § 606(a), who is without available resources, if the assistance is necessary to avoid destitution or to provide living arrangements in a home, and if the need did not arise because such child or relatives refused without good cause to accept training or employment.

*Mandley v. Trainor*, 523 F.2d 415, 418 (7th Cir. 1975).

An applicant may receive Emergency Assistance during only one thirty-day period within each twelve months. 42 U.S.C. § 606(e).

Massachusetts has participated in the Emergency Assistance Program since 1968, and the Commonwealth's plan, together with the restrictions challenged by plaintiffs, has been approved by HEW. The plan provides for payments to avert a variety of emergencies, including those caused

by shelter arrearages and fuel and utility arrearages. The plan limits payments for all shelter, fuel and utility arrearages "to that amount which was incurred within 4 months prior to the date of application for payment under the EA Program." The plan further excludes from coverage rent and utility arrearages incurred in any month in which the applicant was a recipient of public assistance, for example, Aid to Families with Dependent Children (AFDC) and General Relief (GR). Mortgage, real estate tax and fuel arrearages, however, are covered even if incurred while the applicant was a recipient of public assistance. M.G.L. c. 118 § 2; Massachusetts Public Assistance Policy Manual, ch. IV, § A, pt. 4(C) & (D).[1]

The parties have stipulated to the introduction of the uncontroverted affidavits of the sixteen named plaintiffs in lieu of their oral testimony. These affidavits demonstrate the application of the Commonwealth's dual restrictions on Emergency Assistance.

After the termination of the "Initial Needs" and "Hardship" program, which was the subject of the opinion in *Bourgeois v. Stevens*, 532 F.2d 799 (1st Cir. 1976), Emergency Assistance was the only extraordinary relief beyond the standard subsistence payments available for families receiving AFDC. In fact, the availability of Emergency Assistance was a justification for the termination of the "Hardship" program cited by the then Commissioner of Public Welfare at the trial of the *Bourgeois* case before me. There is no other public resource available to such a family who is in jeopardy of losing heat and shelter by reason of arrearages for utilities, fuel and rent. It was conceded at argument that AFDC payments are not based on actual need but are derived from an averaging formula.

The dilemma caused by the four-month rule is illustrated by the case of Richard Jestings. Mr. Jestings incurred rent arrearages for the three months December 1975 through February 1976. He fell behind on his gas payments for the same period as well. His application for AFDC benefits was not approved until February 16, 1976. Plaintiff Jestings resumed full payment of rent in March but did not have

---

1. The regulations provide:

C. *Shelter Arrearages*

Shelter arrearages may be paid when the landlord has commenced ejectment proceedings and the family has been served with (a) a notice to quit and (b) a writ of summary process, or (in units subject to rent control) a certificate of eviction issued by the local rent control board, or has received, in the case of a homeowner, written notice of intent to initiate foreclosure proceedings or when foreclosure proceedings have been initiated due to a mortgage or real estate tax arrearage. Payment of the back rent, overdue mortgage or real estate tax will only be made on the condition that the summary process proceedings or foreclosure proceedings will be dismissed in return for the payment authorized by the Department.

The payment of arrearages for *rent, mortgage,* or *real estate tax* in situations as outlined above is limited to that amount which was incurred within 4 months prior to the date of application for payment under the EA Program.

The payment of arrearages for *RENT* in situations outlined above is subject to a further restriction as follows:

Rent arrearages incurred after January 1976, will not be approved for EA payment for any calendar month in which an applicant or recipient has received assistance.

. . . . .

D. *Fuel and Utility Arrearages*

Gas, electric or fuel arrearages may be paid (either singly or in any combination) when verification has been obtained that a family has received a shutoff notice and an agreement has been reached between the family and the vendor (with the assistance of the worker, when appropriate) that the service will continue. The agreement reached between the family and vendor must be recorded in the case record.

"Fuel" shall be defined as fuel oil, bottled gas, coal or wood.

The payment of arrearages for *fuel* or *utilities*, or both, in situations outlined above is limited to 4 months prior to the date of application for payment under the EA program.

The payment of arrearages for *UTILITIES* in situations outlined above is subject to a further restriction as follows:

Utility arrearages incurred after January 1976, will not be approved for EA payment for any calendar month in which an applicant or recipient has received assistance.

the resources to pay his landlord the three months' back rent. Jestings was not served with an eviction complaint until August 2, 1976. His application for Emergency Assistance in order to avert eviction was denied on August 12 because the rent arrearages were incurred over four months before the application. The Commonwealth legitimately defines the eviction emergency situation as arising when ejectment proceedings have been commenced by the landlord and the family has been served with notice. Jestings could not have applied for Emergency Assistance until August 2, well beyond the four-month period.

The plaintiff class was duly certified pursuant to Fed.R.Civ.P. 23(a), (b)(1) & (2) by order entered on September 23, 1976. The class is defined as including children and their families who satisfy all federal and state prerequisites for Emergency Assistance but who, nevertheless, have been or will be denied Emergency Assistance solely on the basis of their status as recipients of public assistance or solely because their arrearages were incurred more than four months prior to their application for Emergency Assistance, or both.

Plaintiffs base their claim on 42 U.S.C. § 1983 and assert jurisdiction under 28 U.S.C. §§ 1331 and 1343.

■ Section 1343(3) confers jurisdiction over the equal protection claim, which, in my opinion, is of sufficient substance to permit the exercise of pendent jurisdiction over the federal statutory claim. Applicants with identical emergencies are receiving sufficiently different treatment to raise a substantial equal protection claim. *See, e. g., United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 535–38, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Burrell v. Norton,* 381 F.Supp. 339, 342 (D.Conn.1974). *Randall v. Goldmark,* 495 F.2d 356 (1st Cir.) (per curiam), *cert. denied,* 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 119 (1974), is readily distinguishable. If the constitutional claim is substantial, a district court may, pursuant to section 1343(3), hear the statutory claim as pendent to the constitutional claim. *See, e. g., Hagans v. Lavine,* 415 U.S. 528, 536, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *New York Dept. of Social Services v. Dublino,* 413 U.S. 405, 412 n. 11, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Rosado v. Wyman,* 397 U.S. 397, 402–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Williams v. Wohlgemuth,* 540 F.2d 163, 166 (3d Cir. 1976); *Mandley v. Trainor,* 523 F.2d 415, 419 n. 2 (7th Cir. 1975).

■ It appears to me to be extremely doubtful, however, that the claims of the plaintiffs should be aggregated to satisfy the requisite jurisdictional amount under 28 U.S.C. § 1331. *Cf. Berman v. Narragansett Racing Association,* 414 F.2d 311, 314–16 (1st Cir. 1969), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970).[2]

"[I]f a case can be decided on either of two grounds, one involving a constitutional

---

**2.** None of the individual plaintiffs can meet the $10,000 jurisdictional amount. It is well-settled that the mere maintenance of a class action does not of itself justify aggregation or otherwise affect the jurisdictional amount. *Snyder v. Harris,* 394 U.S. 332, 338, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969); *accord, Zahn v. International Paper Co.,* 414 U.S. 291, 300–01, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Aggregation has been permitted, however, when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris, supra,* 394 U.S. at 335, 89 S.Ct. at 1056. The First Circuit has adopted a "trust fund" theory of aggregation, under which several plaintiffs need not hold their claims jointly so long as they assert "an integrated right against the defendant." An important element of the ap-

proach is that the defendants' total liability remain the same no matter how the "fund" is apportioned. *Berman v. Narragansett Racing Ass'n,* 414 F.2d 311, 314–16 (1st Cir. 1969), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970); *accord, Dierks v. Thompson,* 414 F.2d 453, 456 (1st Cir. 1969). The trust fund approach has been extended from the facts in *Berman* to challenges of welfare programs. *Bass v. Rockefeller,* 331 F.Supp. 945, 950–51 (S.D.N.Y.1971), *vacated and remanded as moot,* 464 F.2d 1300 (2d Cir. 1971) (per curiam); *accord, New Jersey Welfare Rights Organization v. Cahill,* 483 F.2d 723, 725 n. 2 (3d Cir. 1973); *Yanez v. Jones,* 361 F.Supp. 701, 706 (D.Utah 1973). *Contra, Russo v. Kirby,* 453 F.2d 548, 551 (2d Cir. 1971); *Knuckles v. Weinberger,* 371 F.Supp. 565, 566 (N.D.Cal. 1973); *Ramirez v. Weinberger,* 363 F.Supp.

question, the other a question of statutory construction or general law, the Court will decide only the latter." *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), *citing Siler v. Louisville & Nashville R.R.*, 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

Under the AFDC program, federal eligibility standards are mandatory; participating states have no discretion to limit eligibility further. *Philbrook v. Glodgett*, 421 U.S. 707, 719, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Van Lare v. Hurley*, 421 U.S. 338, 340, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Carleson v. Remillard*, 406 U.S. 598, 600–01, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *Townsend v. Swank*, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith*, 392 U.S. 309, 333 & n.34, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The same principle applies to the Emergency Assistance Program, subject to express congressional reservations of state discretion in specific areas.

> Section 606(e) is part of the same statutory scheme as Sections 606(a) and 602. The same Congressional concern with deprivation of children that brought forth the AFDC program was at the root of the emergency assistance program as well. Since the legislative history of the latter program demonstrates continuing Congressional concern with the nation's poor children and contains no indication that its eligibility provisions are to be more in state control than its closely related sister program, we must follow the number of Supreme Court cases that have held that the eligibility provisions of the federal program cannot be narrowed by the states.

*Mandley v. Trainor*, 523 F.2d 415, 422 (7th Cir. 1975); *accord, Williams v. Wohlgemuth*, 540 F.2d 163, 169–70 (3d Cir. 1976).

105, 108 (N.D.Ill.1973), *aff'd mem.*, 415 U.S. 970, 94 S.Ct. 1553, 39 L.Ed.2d 867 (1974). This extension of the trust fund theory beyond the facts of *Berman* is unwarranted. The welfare

Defendants contend, however, that the recipient status restrictions and the four-month rule do not narrow eligibility; rather, they limit the benefits available to eligible applicants for Emergency Assistance.

■■ Under the AFDC program, states have broad discretion to determine the level of benefits available. *Jefferson v. Hackney*, 406 U.S. 535, 541, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Rosado v. Wyman*, 397 U.S. 397, 408, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith*, 392 U.S. 309, 318–19, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The same principle undoubtedly applies to Emergency Assistance. Under the AFDC program, however, a state "may not obscure the *actual* standard of need" by its method of reducing benefits. *Rosado v. Wyman*, 397 U.S. at 413, 90 S.Ct. at 1218. Similarly, a state should not be permitted to limit eligibility for Emergency Assistance under the guise of reducing the level of benefits.

■ The statutory scheme and legislative history of section 606(e) reveal a congressional policy of according equitable treatment to all families faced with emergencies and eligible under the federal standards. S.Rep.No.744, 90th Cong., 1st Sess., 2 U.S. Code Cong. & Admin.News, 2834, 3002–04 (1967). Indeed, interpretive administrative regulations applicable to several titles of the Social Security Act, including the Emergency Assistance Program, support this view.

> The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act.

45 C.F.R. § 233.10(a)(1) (1975).

■ The Commonwealth's recipient status restriction, which denies benefits to oth-

cases are apparently indistinguishable from the facts of *Gas Service Co. v. Coburn*, the companion case to *Snyder v. Harris, supra*.

erwise eligible applicants for rent and utility arrearages incurred while the applicants were recipients of public assistance, offends the congressional policy behind section 606(e) in two ways. First, the restriction discriminates against an applicant on the basis of a status that is irrelevant to his need. Second, the provision distinguishes between different causes of destitution in situations defined by the Commonwealth to be emergencies, regardless of need. The recipient status restriction applies to rent and utility arrearages but not to mortgage, real estate taxes and fuel arrearages. Each of these aspects of the restriction independently contradicts the congressional policy of treating all families eligible under federal standards equitably.

The prevention of improvident use of regular AFDC or GR payments with the resulting unnecessary or fraudulent applications for emergency relief should not be accomplished by denying Emergency Assistance to legitimate applicants. The federal statute contains its own safeguard against parental fraud. 42 U.S.C. § 606(e)(1). Moreover, an appropriate device is the use of vendor payments, which is authorized under existing Massachusetts regulations. Mass. Pub.Assist.Policy Manual, ch. I, § G, at 3 (July 1975 Rev.).

Similar state restrictions that deny Emergency Assistance because of the particular events which generated the emergency or the status of the applicant have been uniformly held to be in conflict with the federal statute. *See, e. g., Williams v. Wohlgemuth,* 540 F.2d 163, 168 (3d Cir. 1976); *Mandley v. Trainor,* 523 F.2d 415, 418–20, 423 (7th Cir. 1975).

The principle of the cited cases is equally applicable to the four-month rule, which denies Emergency Assistance because of the timing of the circumstance giving rise to the emergency. Application of the rule is often fortuitous and wholly beyond the control of the applicant. In any case, it is irrelevant to the congressional purpose to protect children from destitution or deprivation of at least minimal living arrangements.

Accordingly, the fourth paragraph of M.G.L. c. 118 § 2 and so much of the Massachusetts Public Assistance Policy Manual, ch. IV, § A, parts 4(C) and (D), as establishes the recipient status restriction and the four-month rule are declared invalid, and the defendants are to be enjoined from denying Emergency Assistance to present and future members of the plaintiff class as heretofore defined, for as long as Massachusetts continues to participate in the federal program.