**Donald KOZINSKI, and Kathleen Kozinski, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Wilbur J. SCHMIDT et al., Defendants.**

No. 75–C–650.

United States District Court,
E. D. Wisconsin.

July 28, 1977.

See also 409 F.Supp. 215.

Anne L. DeLeo, Steven H. Steinglass, Milwaukee Legal Services, Milwaukee, Wis., for plaintiffs.

Bronson C. LaFollette, Atty. Gen. by Maureen A. McGlynn and Ward L. Johnson, Jr., Madison, Wis., for defendants.

Before WOOD, Circuit Judge, and REYNOLDS and GORDON, District Judges.

## DECISION and ORDER
## I.  INTRODUCTION

The plaintiffs and the defendants have filed cross-motions for summary judgment. This is a class action brought by individuals who were denied benefits under the Wisconsin emergency assistance program against the secretary of the Wisconsin department of health and social services, his successors and agents. The plaintiffs allege that the Wisconsin program for emergency assistance, Wis. Stat. § 49.19(11)(b) (1973), as recreated by ch. 39, Laws of 1975, operates to exclude them from eligibility for emergency assistance in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. The plaintiffs seek an injunction preventing the defendants from refusing to provide emergency assistance to the class.

The plaintiffs also contend that the Wisconsin program violates their rights under the federal emergency assistance program, 42 U.S.C. § 606(e)(1) and the supremacy clause of the United States Constitution and seek a declaration that future participation by the defendants in the federal program is illegal.

### A.  Statutory background

At the time this action was commenced, Wisconsin participated in the federal program of aid to families with dependent children (AFDC), 42 U.S.C. §§ 601 et seq., which includes a program of emergency assistance to families with needy children, 42 U.S.C. § 606(e). The latter section

". . . authorizes emergency assistance to a needy child under 21, living with relatives specified in 42 U.S.C. § 606(a), who is without available resources, if the assistance is necessary to avoid destitution or to provide living arrangements in a home, and if the need did not arise because such child or relatives refused without good cause to accept training or employment." *Mandley v. Trainor*, 523 F.2d 415, 418 (7th Cir. 1975).

As a condition of receiving federal reimbursement, the states must submit plans complying with the social security act.

Wisconsin's participation in the federal emergency assistance plan began in 1973, when Wis. Stat. § 49.19(12) was created by ch. 90, Laws of 1973, § 247m. The statute established a program for AFDC recipients covering emergencies caused by "fire, flood, tornado or other natural disasters or for replacement of major household appliances when there has been a nonreparable breakdown."

In 1975, the Wisconsin legislature amended Wis. Stat. 49.19(11)(b), as follows:

"The department shall implement a program of emergency assistance to needy persons in case of fire, flood or natural disaster. Eligibility shall not exceed the limitations for federal participation defined by federal regulations, in-

cluding 45 CFR 233.120. The aid granted shall not exceed $150 per family member."

This statute modified the Wisconsin program to extend assistance to all needy families with children even though ineligible for the AFDC unemployed father program. See Wis. Stat. § 49.19(4)(dm) (1973), and 42 U.S.C. § 607. The legislature rejected a proposal submitted by the governor of Wisconsin to eliminate the requirement that emergencies arise from fire, flood, or natural disaster. Assembly Bill 222, section 376, January 28, 1975.

### B. Facts

The facts are undisputed. The named plaintiffs, Donald and Kathleen Kozinski, have nine children. At the commencement of this action, Donald Kozinski was temporarily unable to work for medical reasons, forcing the Kozinski family to rely on other limited sources of income. Gas service to the Kozinski home had been disconnected, and the gas company had informed the Kozinski family that service would not be restored unless they complied with a payment schedule imposed to eliminate arrearages and assure future payments. The Kozinskis were also served with a five-day notice to quit or pay back rent in the amount of $660.00 shortly after this action was filed.

Because the Kozinskis were financially unable to pay these bills, they were without heat in their home and were under the threat of eviction in November, 1975. They then requested that the Milwaukee county department of public welfare provide them with emergency assistance to forestall the threatened eviction and to restore gas service for their home. Since, apparently, their situation did not occur as a direct result of fire, flood or natural disaster, the Kozinskis were told they were ineligible to receive assistance under the Wisconsin emergency assistance program. The plaintiffs then commenced this action.

In a decision and order dated December 11, 1975, a single-judge court certified the following plaintiff class:

"All needy families with children in Wisconsin who are otherwise eligible to receive emergency assistance but who have been, are being and will be denied such emergency assistance to maintain or to restore their heat and utility services or to avoid eviction from their homes."

Relying on *Mandley v. Trainor*, 523 F.2d 415 (7th Cir. 1975) (*Mandley I*), the court entered a preliminary injunction prohibiting the defendants from limiting emergency assistance for the plaintiffs and their class to instances of emergency occasioned by fire, flood or natural disaster while accepting federal reimbursement pursuant to 42 U.S.C. § 606(e)(1). The court also specified that "nothing in [the] order shall restrict the defendants' ability to modify or rescind its participation in the federal emergency assistance program . . . ." *Kozinski v. Schmidt*, 409 F.Supp. 215, 218–19 (E.D.Wis. 1975).

The defendants subsequently decided to withdraw from the federal emergency assistance program and forego further federal funding rather than expand the state program's coverage to be consistent with the preliminary injunction. The defendants then moved to dismiss the action on the ground that withdrawal from the federal program rendered the action moot. In a decision and order dated August 13, 1976, the single-judge court denied the defendants' motion on the ground that the plaintiffs' action also challenged the state program on Fourteenth Amendment equal protection grounds. Since the plaintiffs sought injunctive relief against a state statute on constitutional grounds, a three-judge court was convened on August 16, 1976. 28 U.S.C. §§ 2281, 2284.

### II. SUMMARY JUDGMENT

### A. Equal protection

The preliminary injunction was issued based on the probability of the plaintiffs' success on the merits of their statutory claim. In accordance with the practice of avoiding constitutional questions where a non-constitutional ground exists for resolving the case, *Mandley I, supra*, at 419, the

merits of the equal protection aspects of the plaintiffs' case were not discussed in either of the earlier decisions. Because of the defendants' withdrawal from the federal program, the defendants have been able to withhold emergency assistance from the plaintiffs and still remain entirely consistent with the injunction. Consequently, the primary focus of the parties' briefs on the present motions has shifted to the equal protection claim.

We enter upon an examination of this claim cognizant of the standard for reviewing state social welfare legislation set forth in *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970):

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393."

The Court has reaffirmed that *Dandridge* governs the disposition of constitutional challenges to social welfare legislation. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Accordingly, we must afford considerable discretion to legislative choices in this field. *Fisher v. Secretary of Dept. of Health, Education & Welfare*, 522 F.2d 493 (7th Cir. 1975).

The plaintiffs argue that the defendants have no reasonable basis for extending emergency assistance to victims of fire, flood, or other natural disasters but denying it to families threatened with eviction and utility termination. It is asserted that the plaintiffs are faced with an immediate crisis that threatens the safety and security of their home, and therefore they have the same basic needs that eligible families have.

The defendants' position is that it is permissible for the legislature to create a limited welfare program because of the limitation on available state funds. The defendants contend that the legislature made a reasonable policy decision in adopting a program designed to provide benefits for emergencies caused by natural disasters as distinguished from "emergencies brought about by the inequities of our economic system and the chronic inadequacy of individual financial resources." The defendants do not dispute that it would be desirable for the statute to cover emergencies arising from evictions or utility terminations, but it is argued that the equal protection clause permits legislative attempts to solve societal problems "one step at a time."

Numerous cases decided by the United States Supreme Court provide cogent authority to support the defendants' "one step at a time" rationale:

"This Court has held that, consistently with the Equal Protection Clause, a State 'may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . .' *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). Particularly with respect to social welfare programs, so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point. '[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.' *Dandridge*

*v. Williams,* 397 U.S. 471, 486–487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)." *Geduldig v. Aiello,* 417 U.S. 484, 495, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256 (1974).

In *Geduldig,* the Court reviewed an equal protection attack on a state disability insurance program that excluded disabilities attributed to normal pregnancy and delivery. The Court rejected the attack, reasoning that a state has a legitimate interest "in distributing the available resources in such a way as to keep benefit payments at an adequate level for disabilities that are covered, rather than to cover all disabilities inadequately," and that this interest "provide[s] an objective and wholly noninvidious basis for the State's decision not to create a more comprehensive insurance program than it has." *Geduldig,* supra, at 496, 94 S.Ct. at 2492.

■ Similarly, in the instant case, the state has a legitimate interest in distributing the available resources so as to adequately cover emergencies arising from fire, flood, or natural disaster rather than all other emergencies that could conceivably arise.

■ In our opinion, the line drawn between covered and noncovered emergencies is rationally supportable. We do not believe that it is arbitrary or irrational for the state legislature to address the special needs of families that fall victim to fires, floods, or other natural disasters, as distinguished from other crises that economically-disadvantaged families face. The defendants note that legislative concern for dislocations resulting from natural disasters has prompted other legislation. See e.g. Disaster Relief Act of 1974, P.L. 93–288, 42 U.S.C. § 5121 *et seq.*

The plaintiffs contend that the financial history of the emergency assistance program precludes the defendants from claiming that the limited state resources justify the exclusion of the plaintiffs from coverage. The plaintiffs point to the fact that most of the funds appropriated for the program remain unspent.

We find this line of argument unimpressive. The amount of money actually expended for emergency assistance bears little relevance to the legislature's purpose in choosing the risks to be covered by the program. We may take judicial notice that floods and natural disasters such as tornados frequently result in large-scale destruction of property and dislocation of families. The legislature may have seen fit to appropriate large sums of money for the emergency assistance program for this reason. The fact that most of the funds remain unspent may only indicate that fewer or less severe natural disasters occurred than were expected. It certainly does not prove that the legislature was unconcerned with the problem of limited resources when it restricted the program's coverage to emergencies arising out of fires, floods, or natural disasters.

■ More fundamentally, however, the plaintiffs' argument must fail because it is not our function to scrutinize the state's balance sheet for inequities and decree a fairer allocation of resources. It is for legislatures rather than courts to solve the "intractable economic, social, and even philosophical problems presented by public welfare assistance programs." *Dandridge,* supra, 397 U.S. at 487, 90 S.Ct. at 1163.

The plaintiffs also claim that no state interest is furthered by excluding "severe cold" from the definition of "natural disaster," one of the categories covered by the emergency assistance program. The defendants have responded stating that severe cold weather could *cause* conditions, such as the bursting of frozen water pipes, which could make families eligible for emergency assistance under the state program.

It is apparent that the type of severe cold for which the plaintiffs seek emergency assistance is that which results from the loss of utility service for lack of payment. Thus, the plaintiffs are merely arguing in different language that the legislature has unreasonably decided to provide benefits for some emergencies but not others. As stated previously, however, we do not find their decision to be arbitrary and irrational.

The plaintiffs rely to a considerable extent on *Burrell v. Norton*, 381 F.Supp. 339 (D.Conn.1974), in which a limitation in the risks covered by the Connecticut emergency assistance program was held unconstitutional on equal protection grounds. In *Burrell*, the plaintiff had applied for emergency assistance to replace personal property stolen from her apartment. Her application was denied because the challenged administrative regulation limited emergency assistance for the replacement of property to losses caused by fire or flood.

We find *Burrell* distinguishable. First, the court specifically found that the challenged regulation's eligibility requirements· excluded a class of recipients intended to be covered under the Connecticut program. *Burrell*, supra, at 342. In the instant case, in contrast, it is clear from the legislative history of the state program that the plaintiffs and their class were *intended* to be excluded from eligibility under the Wisconsin emergency assistance program.

As noted earlier, the governor of Wisconsin submitted a budget bill that proposed to expand the Wisconsin emergency assistance program to operate coterminously with the federal program. Assembly Bill 222, section 376, January 28, 1975. The governor's bill would have removed the state statutory requirement that emergencies arise from fire, flood, or natural disaster. The legislature rejected the governor's proposal, deciding instead to adopt the present version of Wis. Stat. § 49.19(11)(b) with the language limiting the type of emergencies for which emergency assistance is available. The language of Wis. Stat. § 49.19(11)(b) and its legislative history lead to the unmistakable conclusion that assistance is intended to be available only to victims of fire, flood, or natural disaster.

Second, the *Burrell* case is replete with references to the comprehensive nature of the Connecticut emergency assistance program. The Wisconsin program, on the other hand, clearly reflects a legislative decision to take a more limited step in meeting emergency needs.

Third, the defendants in *Burrell* advanced entirely different rationales from those advanced in the case at bar to support the distinction between recipients and those excluded: (1) the prevention of fraudulent claims, and (2) a policy of encouraging careful management of the recipients' possessions. Both were found by the court to be inadequate. In this case, we have found the defendants' suggested rationale (the greater need of victims of fire, flood, or natural disaster) sufficient under the rational basis standard of *Dandridge.*

■ Insofar as the court in *Burrell* held that the equal protection clause prohibits a welfare program that distinguishes between particular catastrophies, we simply disagree. If the only permissible criterion for welfare eligibility were "the existence of immediate and ascertainable need," *Burrell*, supra, at 342, many states might be unable to provide adequate benefits for any disability since their resources would be spread too thin. However, the law is clear that state legislatures may selectively address the welfare problems deemed most acute. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Therefore, we decline to follow *Burrell* in this case.

We therefore hold that the Wisconsin emergency assistance program, Wis. Stat. § 49.19(11)(b), does not deprive the plaintiff class of equal protection under the Fourteenth Amendment.

B.  The statutory claim

For their statutory claim, the plaintiffs contend that the limitations on eligibility for emergency assistance imposed by Wis. Stat. § 49.19(11)(b) (1973), as recreated by chap. 39, Laws of 1975, are unlawful because they are inconsistent with the eligibility requirements in the federal emergency assistance program, 42 U.S.C. § 606(e), and consequently, are invalid under the supremacy clause of the Constitution. *Mandley v. Trainor*, 523 F.2d 415 (7th Cir. 1975).

The single-judge court issued a preliminary injunction on December 11, 1975, enjoining the defendants

". . . from limiting emergency assistance for the plaintiffs and the class they represent to cases of fire, flood or natural disaster and from failing to provide emergency assistance forthwith to otherwise eligible needy families with children who need such emergency assistance to avoid eviction from their homes or to maintain or restore heat or utility service in their homes; however, nothing in this order shall restrict the defendants' ability to modify or rescind its participation in the federal emergency assistance program, and this order is applicable only to emergency assistance given by the defendants for which federal reimbursement is received pursuant to 42 U.S.C. sec. 606(e)(1)." *Kozinski*, supra, at 218–19.

Subsequently, the defendants refused further federal reimbursement for the Wisconsin program, thereby effectively removing the Wisconsin program from the mandate of the preliminary injunction.

The plaintiffs have abandoned the request made in their complaint for a permanent injunction and instead seek summary judgment in the form of a declaration that the Wisconsin emergency assistance program violates rights secured to the plaintiffs under 42 U.S.C. § 606(e).

On the merits of the plaintiffs' statutory claim, the defendants concede that "[i]t is now unmistakably clear, in this jurisdiction at least, that states can participate in the Federal Emergency Assistance Program . . . only if their eligibility requirements are at least as broad as those contained in the Federal law and regulations." The defendants also state that "[t]here is absolutely no evidence before the court . . . that there is now any real dispute between the parties as to the requirements of the federal law." The defendants' concessions in this regard are amply supported by the decisions of the court of appeals for this circuit, *Mandley I*, supra, and *Mandley v. Trainor (Mandley II)*, 545 F.2d 1062 (7th Cir. 1976), and by the decisions of other federal appellate and district courts. *Williams v. Wohlgemuth*, 540 F.2d 163, 169–70

(3d Cir. 1976); *Hagans v. Berger*, 536 F.2d 525 (2d Cir. 1976); *Ingerson v. Sharp*, 423 F.Supp. 139 (D.Mass.1976).

Notwithstanding the foregoing concessions, the defendants forcefully urge that they should have summary judgment dismissing the plaintiffs' statutory claim on the ground that the defendants' withdrawal from the federal program rendered that claim moot. The defendants argue that such mootness precludes our review because of the absence of a case or controversy as required by Article III of the Constitution. *Defunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). The defendants also claim to be entitled to summary judgment because the plaintiffs' statutory claim fails to meet the amount in controversy requirement of 28 U.S.C. § 1331. We now turn to these alleged jurisdictional obstacles.

1. Amount in controversy

The defendants rely on *Zahn v. International Paper Co.*, 414 U.S. 812, 94 S.Ct. 33, 38 L.Ed.2d 46 (1973), for the proposition that individual class members may not aggregate separate and distinct claims for purposes of satisfying the jurisdictional amount requirement of 28 U.S.C. §§ 1331 and 1332. It is argued that the maximum amount of any emergency assistance grant is limited to $150.00 per family member, and that because the Kozinski family consists of 11 members, the maximum value of their individual claim would be $1,650.00, far less than the $10,000 amount in controversy requirement. In the December 11, 1975, decision on the plaintiffs' motion for a preliminary injunction, the court specifically found that jurisdiction over the statutory claim could be assumed pendent to the constitutional claim. *Kozinski*, supra, at 217; accord, *Ingerson*, supra, at 142. We therefore reject the defendants' amount in controversy argument.

2. Mootness

The defendants contend that the defendants' voluntary withdrawal from the federal emergency assistance program renders the statutory claim moot.

The plaintiffs contend that the case is not moot, relying on a line of cases holding that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *United States v. Phosphate Export Assn.*, 393 U.S. 199, 202–203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968), quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); accord, *Gautreaux v. Romney*, 448 F.2d 731, 735 (7th Cir. 1971).

Nevertheless, we find that the plaintiffs' statutory claim no longer presents a justiciable case or controversy. In *United States v. W. T. Grant Co.*, supra, at 633, 73 S.Ct. at 898, the Court stated:

"The necessary determination [prerequisite to injunctive relief] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."

There does not appear to be any likelihood that the defendants will seek federal reimbursement while continuing to limit the type of emergencies for which assistance may be received. The defendants have filed an affidavit indicating that subsequent to December 16, 1975, no claims for federal reimbursement have been made by the defendants. Under these circumstances, we would be rendering an advisory opinion if we entertained the merits of the plaintiffs' statutory claim. We therefore must deny the plaintiffs' request for declaratory relief.

Therefore, IT IS ORDERED that the plaintiffs' motion for summary judgment be and hereby is denied.

IT IS ALSO ORDERED that the defendants' motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that this action be and hereby is dismissed.