Jeanne **BACON, Individually and on behalf of her minor children Robert Bacon and Ife Bacon, and on behalf of all other persons similarly situated, Plaintiffs,**

v.

Philip L. **TOIA, Individually and as Commissioner of the Department of Social Services of the State of New York, and Charles W. Bates, Individually and as Commissioner of the Westchester County Department of Social Services, Defendants.**

No. 77 Civ. 2823.

United States District Court,
S. D. New York.

Sept. 29, 1977.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendant Toia; Robert S. Hammer, Asst. Atty. Gen., New York City, of counsel.

David N. Brainin, County Atty., White Plains, N. Y., for defendant Charles W. Bates; Cheryl J. Bradley, White Plains, of counsel.

Westchester Legal Services, Inc., New Rochelle, N. Y., for plaintiffs; Eileen R. Landau, Yonkers, Martin A. Schwartz, New York City, of counsel.

The Legal Aid Society, Civ.Div., New York City, for plaintiffs; John E. Kirklin, Constance P. Carden, New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

The named plaintiffs, all recipients of public assistance in the form of Aid to Families with Dependent Children ("AFDC"), 42 U.S.C. §§ 601–610, bring this action pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), challenging the validity of Section 350–j of the New York Social Services Law ("NYSSL") as amended May 1, 1977 by the New York Laws of 1977, Chapter 77, Section 10 ("the 1977 amendment"). As explained more fully below, NYSSL § 350–j establishes state eligibility requirements for emergency assistance grants disbursed pursuant to federal emergency assistance legislation, 42 U.S.C. § 606(e). As a result of the 1977 amendment, § 350–j now automatically denies emergency assistance payments (1) in the form of cash to families receiving or eligible to receive AFDC payments; (2) in all cases of loss, theft or mismanagement of a public assistance grant; and (3) in all cases when sought to replace or duplicate a recurring public assistance grant. Plaintiffs claim they applied for and were denied emergency assistance solely due to the 1977 amendment of NYSSL § 350–j. They assert that § 350–j, as amended, violates the Due Process and Equal Protection provisions of the Constitution. Plaintiffs also contend that the 1977 amendment is unauthorized by and in conflict with the federal eligibility requirements provided in 42 U.S.C. § 606(e) and is therefore invalid under the Supremacy Clause of Article VI of the Constitution.

Suing on behalf of themselves and their minor children and all other persons similarly situated, plaintiffs seek an injunction against defendants' enforcement of the 1977 amendment to NYSSL § 350–j and a declaratory judgment of its invalidity, pursuant to 28 U.S.C. §§ 2201 and 2202.

Defendant Philip Toia is sued individually and as Commissioner of the New York State Department of Social Services ("the State Commissioner"), in which capacity he is responsible for the state-wide administration of New York public assistance programs in general and for the enforcement of NYSSL § 350–j, as amended, in particular. Defendant Charles Bates is sued individually and as Commissioner of the Westchester County Department of Social Services, in which capacity he acts as agent for the State Commissioner and is responsible for the administration of New York public assistance programs in Westchester County.[1]

### Proceedings to Date

On June 13, 1977 this court issued a temporary restraining order which enjoined defendants from enforcing the provisions contained in the 1977 amendment to NYSSL § 350–j in their consideration of plaintiff Jeanne Bacon's application for emergency assistance. A motion for class certification pursuant to Rule 23(b)(2), Fed.R.Civ.P., was filed on June 27, 1977. On August 2, pursuant to stipulations entered into by all parties, Gertrude Parrish, Freddie Mae Goodwine and Linda Selders were permitted to intervene as parties plaintiff on behalf of themselves and their minor children, and all prior pleadings, including the original complaint and motion for class certification,

were made applicable to them. The court issued a temporary restraining order enjoining defendants from applying the contested portions of the 1977 amendment of NYSSL § 350–j as to the applications for emergency assistance of Ms. Goodwine and Ms. Selders, and the defendants stipulated to refrain from applying the 1977 amendment to Ms. Parrish's application.

Upon agreement of the parties and pursuant to Rule 65(a)(2), Fed.R.Civ.P., the court determined to treat plaintiffs' application for a preliminary injunction as an application for a permanent injunction. Plaintiffs have moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., and have renewed their motion for class certification. Concluding that there is no genuine issue as to any material fact and that the disputed legal issues are clearly before it, this court has proceeded to decide the merits of plaintiffs' claim. *See Davis v. Smith*, 431 F.Supp. 1206 (S.D.N.Y.1977). For the reasons which follow and to the extent indicated below, the court grants plaintiffs' motion for class certification and their motion for summary judgment.

### Facts

The essential facts, established by the pleadings and the affidavits submitted on plaintiffs' motion for summary judgment, are as follows:

Plaintiff Bacon lives in Mamaroneck, New York with two infant children. She has no bank account and owns no real property, securities or personal property of any value. Her sole source of income consists of public assistance in the form of Aid to

---

1. Plaintiffs additionally seek damages against the defendants in their individual capacities, under 42 U.S.C. § 1983, alleging that they acted in bad faith in enforcing the challenged sections of NYSSL § 350–j, as amended, in that they knew or should have known that those sections violated the Social Security Act. However, it appears from the present record that defendants' actions were consistent with and pursuant to the laws of New York State, and that this lawsuit is primarily an attack on a state statute and not defendants' actions taken under it. *See Rosado v. Wyman*, 414 F.2d 170,

178 (2d Cir. 1969), *rev'd on other grounds*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Nevertheless, since plaintiffs have not pressed their damage claims here, defendants have not moved to dismiss those claims, and, for the reasons discussed *infra*, this court does not now reach the merits of the constitutional claims, no opinion is expressed concerning the merits of plaintiffs' claim for damages. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jones v. Marshall*, 528 F.2d 132 (2d Cir. 1975).

Families with Dependent Children (AFDC) amounting to $200 per month, excluding rent. Bacon received her monthly AFDC check on June 1, 1977, cashed it at her bank, paid utility and telephone bills totalling $50, and purchased $130 worth of food stamps for $76. While grocery shopping, Bacon discovered that her wallet containing the food stamps and remaining cash was missing. She promptly notified the Mamaroneck Police Department that her wallet had been stolen and also informed the White Plains office of the Westchester County Department of Social Services ("Westchester Social Services"). She explained that she was consequently without resources to purchase food and other essentials for herself and her children, and requested emergency assistance relief.

On June 3, 1977 plaintiff Bacon was informed by Westchester Social Services that her application for emergency assistance was denied on the ground that the 1977 amendment to NYSSL § 350-j prohibited the granting of emergency assistance to replace lost or stolen public assistance funds. This denial and its justification were confirmed by Westchester Social Services in a letter dated June 8, 1977, sent to Ms. Bacon at her request.[2]

The circumstances which precipitated the applications for emergency assistance by plaintiffs Parrish, Goodwine and Selders were substantially similar. Each of these women resides in Westchester County with at least one minor child. None has a bank account or valuable personal property, and none owns securities or real property. The sole source of income for each consists of monthly AFDC assistance. In the case of each intervenor, her July 1, 1977 AFDC check was received and promptly cashed; various purchases were made for items such as food stamps, clothing and detergent; and the cash or food stamps remaining after the purchases were subsequently stolen or lost, leaving the victims without the means to buy food and other essentials. Each woman reported her loss to the local police and the appropriate office of Westchester Social Services and all three requested emergency assistance to enable them to purchase necessaries for themselves and their children for the month of July. Each was denied emergency assistance due to the 1977 amendment.

Ms. Goodwine, who suffered the loss of all of her cash, totalling $200 on July 1, was denied emergency assistance and informed by letter dated July 5 that the 1977 amendment provided there could be "no duplication of P[ublic] A[ssistance] Grants for *lost, stolen* or mismanaged funds" [emphasis in original].[3] Ms. Parrish's apartment was broken into and ransacked in her absence on July 2, 1977, and all of her remaining cash was stolen, as was all of the food ($130 worth) she had bought with her food stamps earlier that day. Her caseworker's supervisor at Westchester Social Services denied her application for emergency assistance on July 6, informing her that "a new law provides that no Emergency Assistance may be given to needy families who are left without funds because of the loss or theft of a public assistance grant."[4] Ms. Selders discovered that the balance of her cash and her unused food stamps voucher were missing from her house following a large social gathering there on the Fourth of July. Her application for emergency assistance to re-

---

2. The June 8, 1977 letter from Westchester Social Services to Plaintiff Bacon stated in pertinent part:

"Because of the implementation of bill section 10 of Chapter 77 of the Laws of 1977, which amends 350–J of the Social Services Law, the District Offices have been prohibited from authorizing emergency grants to duplicate public assistance monies which have been lost, stolen or mismanaged."

3. The July 5, 1977 letter from Westchester Social Services to Plaintiff Goodwine stated in its entirety:

"No Duplication of PA Grants for *lost, stolen* or mismanaged funds. Section 10[1] Chapter 77 of Social Service laws of 1977. Amending Section 131 of Social Service laws. EAF can be used for fuel or natural catastrophy." [sic] [emphasis in original]

4. ¶ 47, Plaintiff's Affidavit in support of motion for summary judgment filed pursuant to Rule 9(g) of the General Rules of this court.

place the lost cash was denied on the basis of the 1977 amendment,[5] although Westchester Social Services did inform her that it would issue a new food stamp voucher for her to use to buy food stamps. However, without cash Ms. Selders was unable to make use of the voucher, for the purchase of food stamps required payment of cash in conjunction with the submission of the voucher.

### Statutes Involved

An understanding of plaintiffs' claim requires a brief review of the federal-state Aid to Families with Dependent Children program, 42 U.S.C. §§ 601–610, a close examination of its provisions for emergency assistance, 42 U.S.C. § 606(e), and an analysis of New York's statutory plan for participation in the program. AFDC, one of several major categorical public assistance programs established by the Social Security Act of 1935, provides for the economic security of children by authorizing substantial federal funds to states choosing to participate in compliance with federal requirements. As described by the Supreme Court in *King v. Smith*, 392 U.S. 309, 316–17, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968):

> The AFDC program is based on a scheme of cooperative federalism. See generally [U.S. Advisory Commission Report on Intergovernmental Relations, Statutory and Administrative Controls Associated with Federal Grants for Public Assistance (1964)] at 1–59. It is financed largely by the Federal Government, on a matching fund basis, and is administered by the States. States are not required to participate in the program, but those which desire to take advantage of the substantial federal funds available for distribution to needy children are required to submit an AFDC plan for the approval of the Secretary of Health, Education and Welfare (HEW). 49 Stat. 627, 42 U.S.C. §§ 601, 602, 603 and 604. See Advisory Commission Report, *supra*, at 21–23. The plan must conform with several requirements of the Social Security Act and with rules and regulations promulgated by HEW. 49 Stat. 627, as amended, 42 U.S.C. § 602 (1964 ed., Supp. II). [footnote omitted].

Congress amended the AFDC statutory scheme in 1968 with the addition of 42 U.S.C. § 606(e), which authorizes participating states to make "emergency assistance [payments] to needy families with children".[6] In brief, this legislation authorizes states to provide specified assistance to a child under 21 who is without available resources if the child is living with relatives specified in 42 U.S.C. § 606(a), if the assist-

---

**5.** Plaintiff Selders received from Westchester Social Services a confirmation of the denial in the form of a memorandum addressed "To Whom It May Concern:"

"Linda Selders has been denied EAF assistance to replace lost cash. Denial per-instructions of Administrative letter number 77."

"Administrative letter number 77," referred to in the quoted memorandum, was a Department of Social Services Directive, Transmittal No. 77 ADM–28, dated May 9, 1977, which advised all Commissioners of Social Services of the implementation of the 1977 amendment to § 350–j of the Social Services Law. Exhibit A to answer of Defendant Bates.

**6.** Pub.L. No. 90–248, 81 Stat. 893 (codified in 42 U.S.C. §§ 603(a)(5), 606(e) (1970)). 42 U.S.C. § 606(e) provides in pertinent part:

(e)(1) The term "emergency assistance to needy families with children" means any of the following, furnished for a period not in excess of 30 days in any 12-month period, in the case of a needy child under the age of 21 who is (or, within such period as may be specified by the Secretary, has been) living with any of the relatives specified in subsection (a)(1) of this section in a place of residence maintained by one or more of such relatives as his or their own home, but only where such child is without available resources, the payments, care, or services involved are necessary to avoid destitution of such child or to provide living arrangements in a home for such child, and such destitution or need for living arrangements did not arise because such child or relative refused without good cause to accept employment or training for employment—

(A) money payments, payments in kind, or such other payments as the State agency may specify with respect to, or medical care or any other type of remedial care recognized under State law on behalf of, such child or any other member of the household in which he is living, and

(B) such services as may be specified by the Secretary; but only with respect to a State whose State plan approved under section 602 of this title includes provision for such assistance.

ance is necessary to avoid the destitution of, or provide living arrangements for, such child, and if the emergency need did not arise because such child or relative refused without good cause to accept training or employment. Substantially identical provisions are set forth in the administrative implementing regulations, 45 C.F.R. § 233.-120(b)(1)(i)–(iv)(1976).

Prior to May 1, 1977, the effective date of the challenged amendment of NYSSL § 350–j, the New York State requirements for eligibility for emergency assistance set out in § 350–j were essentially the same as the federal eligibility requirements established by the emergency assistance provisions of the Social Security Act, 42 U.S.C. § 606(e), *supra.*[7] The state emergency assistance eligibility requirements then in effect were described by the New York Court of Appeals in *Jones v. Berman,* 37 N.Y.2d 42, 371 N.Y.S.2d 422, 332 N.E.2d 303 (1975) and their essential identity with federal requirements was noted:

The phraseology and requirements existent in section 350–j of our Social Serv-

ices Law reflect the applicable Federal provisions (U.S.Code, tit. 42, § 606, subd. [e]; 45 C.F.R. 233.120).

In section 350–j of the Social Services Law, the Legislature lists five requirements that must coexist before an applicant is entitled to emergency assistance: (1) Federal aid must be available; (2) the needy child must be under 21 years of age; (3) the child must be living with a person related to him or her by blood, marriage or adoption; (4) the assistance must be necessary to avoid destitution; and (5) the destitution must not have arisen because the child or relative refused without good cause to accept employment. The same requirements must be established under Federal law (U.S.Code, tit. 42, § 606, subd. [e]; 45 CFR 233.120). *Id.,* at 52, 371 N.Y.S.2d at 428, 332 N.E.2d at 308.

Effective May 1, 1977, however, § 350–j was amended to add three new substantive conditions concerning the eligibility of AFDC and other public welfare recipients for emergency assistance.[8] Needy children

**7.** The pertinent sections of § 350–j prior to the 1977 amendment provided as follows:

§ 350–j. Emergency assistance to needy families with children

1. . . .

2. The term "emergency assistance" means aid, care and services furnished for a period not in excess of thirty days in any twelve month period, in the case of a needy child under the age of twenty-one who is living with a person related to him by blood, marriage or adoption who is eligible to receive aid to dependent children on his behalf pursuant to this chapter and regulations of the department.

3. Emergency assistance to needy families with children shall be provided in accordance with the regulations of the department for children who are without available resources, and when such assistance is necessary to avoid destitution or to provide them with living arrangements in a home, and such destitution or such need did not arise because such children or relatives refused without good cause to accept employment or training for employment.

**8.** By virtue of the 1977 amendment, Sections 2 and 3 of NYSSL § 350–j now provide as follows:

2. For purposes of this section, the term "emergency assistance" means aid, care and services authorized during a period not in excess of thirty days in any twelve month period to meet the emergency needs of a child or the

household in which he is living, in the following circumstances:

(a) where the child is under twenty-one years of age; and

(b) the child is living with, or within the previous six months has lived with, one or more persons specified in subdivision b of section three hundred forty-nine of this chapter; and

(c) in cases of applications for grants of cash assistance, such child or such household is not categorically eligible for or receiving aid to dependent children; and

(d) such emergency needs resulted from a catastrophic occurrence or from a situation which threatens family stability and which has caused the destitution of the child and/or household; and

(e) such occurrence or situation could not have been foreseen by the applicant, was not under his control and, in the case of a person receiving public assistance, did not result from the loss, theft or mismanagement of a regular public assistance grant; and

(f) the emergency grant being applied for will not replace or duplicate a public assistance grant already made under section one hundred thirty-one-a of this chapter.

3. Emergency assistance to needy families with children shall be provided to the extent of items of need and services set forth in sections one hundred thirty-one and one hundred thirty-one-a of this chapter, and items of medical

and households currently eligible for or receiving AFDC assistance are now automatically ineligible for grants of cash assistance. § 350–j(2)(c), as amended. In the case of any applicant currently receiving public assistance, emergency assistance is automatically denied if the emergency resulted from the loss, theft or mismanagement of a regular public assistance grant. § 350–j(2)(e), as amended. Finally, the application for emergency assistance is automatically denied if it will replace or duplicate a public assistance grant previously made. § 350–j(2)(f), as amended. Each of these provisions is challenged on equal protection and due process grounds, and as inconsistent with and violative of the emergency assistance provisions of the Social Security Act. 42 U.S.C. § 606(e).

## Jurisdiction

 In their major objection to this court's consideration of the merits of plaintiffs' claim, defendants dispute this court's jurisdiction to entertain the lawsuit.[9] It is settled that when a state statute is challenged as violative of both the federal Constitution and the Social Security Act, subject matter jurisdiction under 28 U.S.C. § 1343(3) is established as to each claim if

the constitutional challenge is not insubstantial. *Hagans v. Lavine*, 415 U.S. 528, 536–543, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *see Andrews v. Maher*, 525 F.2d 113 (2d Cir. 1975). In *Hagans v. Lavine, supra,* the Supreme Court set out the standards for determining whether an alleged constitutional question is too insubstantial to support the assertion of federal jurisdiction under 28 U.S.C. § 1343(3). To justify dismissal for lack of jurisdiction, the Court there explained, the constitutional cause of action must be "patently without merit," *id.* 415 U.S. at 542, 94 S.Ct. 1372, quoting *Bell v. Hood*, 327 U.S. 678 at 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946), or "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits", *id.* 415 U.S. at 543, 94 S.Ct. at 1382, quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 at 666–67, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). *See also Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

 This court concludes that for jurisdictional purposes these "very minimal

services set forth in section three hundred sixty-five-a of this chapter, and in amounts set forth in the regulations of the department for children who are without available resources, and when such assistance is necessary to avoid destitution or to provide them with living arrangements in a home, and such destitution or such need did not arise because such children or relatives refused without good cause to accept employment or training for employment. Such emergency assistance, but not including cash grants, may be furnished to a family eligible for aid to dependent children only in the form of emergency services, and so long as federal aid remains available, for emergency fuel grants in the form of vendor restricted payments.

9. In addition, defendants urge that this court abstain from deciding this case as a matter of discretion, pending the outcome of the Supreme Court's review of *Mandley v. Trainor*, 545 F.2d 1062 (7th Cir. 1976), *cert. granted sub nom. Quern v. Mandley* and *Califano v. Mandley*, 431 U.S. 953, 97 S.Ct. 2672, 53 L.Ed.2d 269 (1977). This court declines to do so. Admittedly, among the several questions presented for the Court's consideration in *Mandley* is

whether a state that elects to maintain an emergency assistance plan under 42 U.S.C. § 606 must provide relief for all types of destitution for all needy children and their families or whether it may choose what types of destitution it will alleviate. 431 U.S. 953, 97 S.Ct. 2672. However, the primary holding of the Court of Appeals for the Seventh Circuit declared invalid the attempt by Illinois to circumvent established requirements under 42 U.S.C. § 606(e) by implementing an alternative emergency assistance plan and procuring federal funds under 42 U.S.C. § 603(a). 545 F.2d at 1064 and n.2, 1068–71. Supreme Court review is addressed to that issue as well as to other issues not before this court. Because the controlling case law, discussed *infra*, is firmly established and unambiguous, because the probability of an immediate and substantial revision of that law by the Supreme Court is not great, and because the nature of the claims raised and relief sought by plaintiffs concerns the emergency requirements of innumerable families in severe circumstances threatening their welfare, this court concludes that its discretion is best exercised by proceeding promptly to the merits of the case.

standards of merit", *Andrews v. Maher, supra*, 525 F.2d at 116, are sufficiently met by plaintiffs' claim that the 1977 amendments to NYSSL § 350-j violate the equal protection clause of the Fourteenth Amendment. The 1977 amendments deny emergency assistance in all cases in which the emergency resulted from loss, theft, or mismanagement of a regular public assistance grant, deny cash emergency assistance to those eligible for or receiving AFDC only, and deny emergency assistance in all cases to replace or duplicate a recurring public assistance grant. The Second Circuit has determined that the imposition of similar legislative restrictions on public assistance recipients for purposes of eligibility for emergency assistance gives rise to a constitutional claim sufficiently substantial to establish jurisdiction under 28 U.S.C. § 1343(3). *Lynch v. Philbrook*, 550 F.2d 793, 794–795 (2d Cir. 1977); *see also Ingerson v. Sharp*, 423 F.Supp. 139, 141–142 (D.Mass.1976). Other federal courts have determined that emergency assistance eligibility restrictions conditioned on the underlying causes of the emergency may also raise a jurisdictionally sufficient constitutional question. *See, e. g., Williams v. Wohlgemuth*, 540 F.2d 163, 164–166 (3rd Cir. 1976); *Mandley v. Trainor*, 523 F.2d 415, 419 n.2 (7th Cir. 1975); *Ingerson v. Sharp, supra ; Burrell v. Norton*, 381 F.Supp. 339 (D.Conn.1974). *See also Holley v. Lavine*, 529 F.2d 1294, 1295–96 (2d Cir. 1976). Accordingly, upon viewing their equal protection contention in light of the substantiality standard espoused in *Hagans v. Lavine, supra*, this court cannot say plaintiffs' constitutional claim is "completely devoid of merit," and consequently jurisdiction under 28 U.S.C. § 1343(3) is proper.

■ Jurisdiction having been established over the constitutional claims, this court properly has pendent jurisdiction to consider the statutory claim which challenges the 1977 amendment as violative of the Social Security Act and the Supremacy Clause. *Hagans v. Lavine, supra*, 415 U.S. at 536, 543, 94 S.Ct. 1372; *New York Dept. of Social Services v. Dublino*, 413 U.S. 405, 412 n.11, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Lynch v. Philbrook, supra*, 550 F.2d at 795. In accordance with the established principle of deciding cases on statutory rather than constitutional grounds, it is this court's duty to decide plaintiffs' Social Security Act statutory claim first and, if it proves dispositive, not to reach the equal protection and due process claims. *Hagans v. Lavine, supra*, 415 U.S. at 543, 94 S.Ct. 1372; *Dandridge v. Williams*, 397 U.S. 471, 475–76, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Rosado v. Wyman, supra*, 397 U.S. at 402, 90 S.Ct. 1207; *King v. Smith*, 392 U.S. 309, 312 n.3 and 313, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *see Andrews v. Maher, supra*, 525 F.2d at 116 and n.5; *Cordova v. Reed*, 521 F.2d 621, 625 (2d Cir. 1975).

*Class Certification*

Before reaching the merits, however, the court addresses plaintiffs' motion for class certification pursuant to Rule 23(b)(2), Fed. R.Civ.P. Plaintiffs seek to have certified a class composed of those persons who are residents of New York State, who are relatives of and reside with a needy child under the age of 21, and who have been or may be denied requests for emergency assistance due to defendants' enforcement of the challenged provisions of the 1977 amendment of NYSSL § 350-j. In support of their request, plaintiffs contend that class relief should be granted in part to avoid any risk of mootness. The court concludes that the prerequisites for maintaining a class action contained in Rules 23(a) and 23(b)(2), Fed.R. Civ.P., are satisfied and that it is preferable for this suit to be maintained as a class action pursuant to those rules, as explained below.

■ The requirement of Rule 23(a)(1), that the class be so numerous that joinder is impracticable, is plainly met. Although plaintiffs do not specifically allege the number of AFDC or other public assistance recipients who may encounter sudden crises necessitating application for emergency assistance, it is apparent that the total must reach well into the hundreds, perhaps thousands. Defendants do not dispute plaintiffs' representation that as of December, 1976, more than 1,200,000 persons were re-

ceiving AFDC assistance alone, citing *Social Statistics*, New York Department of Social Services. If only a tiny fraction of these individuals should seek cash assistance, suffer the loss or theft of their AFDC grant and seek emergency assistance, or otherwise seek to replace or duplicate a public assistance grant, a sufficiently large class of applicants would be faced with the automatic and categorical denials of eligibility imposed by NYSSL §§ 350–j(2)(c), (e) and (f), as amended, discussed *supra*, to make joinder impracticable. Consequently, the numerosity requirement of Rule 23(a)(1) is satisfied.

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class, and Rule 23(a)(3) that the claims of representative parties be typical of the claims of the class. Both of these requirements are met if the proposed plaintiff class is divided, pursuant to Rule 23(c)(4), into three subclasses challenging the amended NYSSL §§ 350–j(2)(c), 350–j(2)(e), and 350–j(2)(f), respectively. The first subclass, of whom plaintiff Selders is a representative party, consists of those applicants for emergency assistance who pursuant to § 350–j(2)(c), were automatically denied relief in the form of cash because they were eligible for AFDC. The second subclass, represented by plaintiffs Bacon, Goodwine and Parrish, consists of those applicants for emergency assistance who, pursuant to § 350–j(2)(e), were automatically denied assistance because their emergency situations arose from the theft or loss of a regular public assistance grant. The final subclass, also represented by plaintiffs Bacon, Goodwine and Parrish, is made up of those applicants who, pursuant to § 350–j(2)(f), were automatically denied emergency assistance on the ground that it would replace or duplicate a previous public assistance grant.

With this subdivision it is clear that each disputed section of the amended statute is either valid or invalid as to all class members who are denied emergency relief based on its respective eligibility conditions. Although the particular factual circumstances surrounding each individual emergency assistance application will vary from one to another, the aspects of the amended law which are here challenged are its automatic exclusions from eligibility for emergency assistance based on the nature of the emergency or the status of the applicant. These facts will not vary from member to member in each subclass, and the question of law common to each is whether the disputed provision of New York law constitutes an impermissible restriction on federal eligibility standards established in the Social Security Act. Rule 23(a)(2) is thus satisfied. *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir.), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). For the same reasons, the claims of the named plaintiffs are typical of the members of the respective subclass of which they are representative parties, as noted above. Consequently, Rule 23(a)(3) is also satisfied.

■ Further, it is clear that the named plaintiffs will fairly and adequately represent the interests of the subclasses, for plaintiffs' interests and those of the class members are identical and without conflict. Moreover, the legal services organizations acting as counsel for plaintiffs are undisputedly capable of providing competent and adequate representation. Rule 23(a)(4) is thus met.

■ In addition, the provisions of subdivision (b)(2) of Rule 23 are also satisfied. Rule 23(b) states that an action may be maintained as a class action if the requirements of Rule 23(a) are met and, further,

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Final injunctive relief is the primary remedy sought by plaintiffs and is plainly appropriate here where defendants have acted to enforce the provisions of NYSSL § 350–j(2), as amended, so as to preclude consideration for emergency assistance "on grounds generally applicable to the class" or subclasses. The final order of this court will thus have the effect of "settling the legality of [de-

fendants'] behavior with respect to the class as a whole". Notes of Advisory Committee on 1966 Amendment of Rule 23, Subdivision (b)(2).

Class action status has been certified in cases, similar to the present suit, in which state emergency assistance eligibility conditions have been challenged as invalid under the Social Security Act. *See, e. g., Ingerson v. Sharp, supra,* 423 F.Supp. at 142; *Williams v. Wohlgemuth,* 400 F.Supp. 1309, 1314 (E.D.Pa.1975), *aff'd,* 540 F.2d 163 (3d Cir. 1976); *Kozinski v. Schmidt,* 409 F.Supp. 215, 218 (E.D.Wis.1975). Class certification has also been granted regularly in cases involving court invalidation of other statewide welfare statutes or regulations. *See, e. g., Hurley v. Toia,* 432 F.Supp. 1170 (S.D.N.Y.1977); *Viverito v. Smith,* 421 F.Supp. 1305, 1311–1313 (S.D.N.Y.1976); *Aitchison v. Berger,* 404 F.Supp. 1137, 1143 (S.D.N.Y. 1975), *aff'd without opinion,* 538 F.2d 307 (2d Cir.), *cert. denied,* 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976); *Almenares v. Wyman,* 334 F.Supp. 512, 518–519 (S.D.N. Y.), *aff'd as modified,* 453 F.2d 1075 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Hurley v. Van-Lare,* 365 F.Supp. 186, 189–191 (S.D.N.Y. 1973), *rev'd on other grounds sub nom. Taylor v. Lavine,* 497 F.2d 1208 (2d Cir. 1974), *rev'd sub nom. VanLare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Gaddis v. Wyman,* 304 F.Supp. 717, 721 (S.D.N.Y.1969) (three-judge court), *aff'd per curiam sub nom. Wyman v. Bowens,* 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970). Plaintiffs seek to represent all persons otherwise eligible to apply and to be considered for emergency assistance who are automatically denied such eligibility due to defendants' enforcement of the challenged sections of the 1977 amendment to NYSSL § 350–j. As recognized in similar circumstances, "[t]his is a classic case for treatment as a class action under Fed.R.Civ.P. 23(b)(2)." *Aitchison v. Berger, supra,* 404 F.Supp. at 1143.

Although defendants have not contended that this case is moot as to any plaintiff, this court does take note that subsequent to the filing of the complaint, defendants have considered each named plaintiff's application for emergency assistance in the manner requested by plaintiffs, that is, without reference to the challenged provisions of the amended NYSSL § 350–j. As to plaintiffs Bacon, Goodwine and Seldiers, defendants refrained from applying the contested statutory provisions pursuant to the order of this court; as to plaintiff Parish, defendants stipulated to do so. It could be suggested that the named plaintiffs thus no longer have an active controversy with defendants and that consequently the case is moot.[10] However, it is clear that as of the filing of the complaint and the motions to intervene there existed a real and immediate controversy and the request for and grant of class certification extinguishes any possible mootness claim.

In *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court explained that upon certification of a class action, "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the named plaintiff]", *id.,* at 399, 95 S.Ct. at 557, and that the interest of the class may survive that of the plaintiff and thus prevent mootness. This class interest survives even though defendants' actions arguably rendered the individual plaintiffs' claims moot prior to a judicial determination of the certification issue. As the *Sosna* court stated:

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back"

---

10. For example, defendant Bates affirmatively alleged in his Answer, ¶ 14, that subsequent to the court's restraining order issued on behalf of plaintiff Bacon, defendant Bates reviewed plaintiff's application for emergency assistance according to the guidelines of former NYSSL § 350–j; he determined that she was eligible for relief; and she received a grant of emergency assistance.

to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review.

*Id.* at 402, n.11, 95 S.Ct. at 559.

The circumstances of this lawsuit clearly support the claim that without class certification "relating back" to the filing of the complaint, the issue of the validity of NYSSL § 350–j, as amended, would evade review. Of course, this is not a case in which the passage of time changes the circumstances of a specific plaintiff and thus moots that plaintiff's claim. *Cf. Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Here the mootness could be "created by the action of the defendant who could agree to the payment of [the benefits sought by a plaintiff] every time an action is instituted." *Lugo v. Dumpson,* 390 F.Supp. 379, 381 (S.D.N.Y.1975). *See also Hurley v. Toia, supra,* 432 F.Supp. at 1175 and n.9; *Viverito v. Smith, supra,* 421 F.Supp. at 1307.

The very nature of an application for emergency assistance guarantees that the immediate dispute between an applicant and the New York Department of Social Services will be short-lived. Such an application requires prompt action, and in any event emergency assistance cannot be sought for a period in excess of 30 days in any 12 month period. 42 U.S.C. § 606(e)(1). There is no doubt that defendants intend, and indeed are required, to enforce NYSSL § 350–j, as amended, in the future. Consequently, the circumstances of this case plainly warrant the "relation back" of class certification to the filing of the complaint. *Gerstein v. Pugh,* 420 U.S. 103, 110–111 n.11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Sosna v. Iowa, supra,* 419 U.S. at 402 n.11, 95 S.Ct. 553; *Zurak v. Regan,* 550 F.2d 86, 91–92 (2d Cir.), *cert. denied,* —— U.S. ——, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *Williams v. Wohlgemuth, supra,* 540 F.2d at 166–167; *Frost v. Weinberger,* 515 F.2d 57, 62–64 (2d Cir. 1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Lugo v. Dumpson, supra,* 390 F.Supp. at 381; *cf. Brown v. Lynch,* 415 F.Supp. 740 (D.Conn.1976); *Robinson v. Leahy,* 73 F.R.D. 109 (N.D.Ill.1977).

Since the requirements of Rule 23, Fed.R. Civ.P., are fully satisfied, and defendants have not suggested nor has the court discerned any prejudice resulting from class certification, plaintiffs may proceed as a class without further assuming the burden of proving its necessity.[11] *Percy v. Brennan,* 384 F.Supp. 800, 811 (S.D.N.Y.1974). Class certification based on the subdivisions described *supra* is therefore granted.

### The Merits

This court must conduct its examination of each of the three challenged statutory provisions bearing in mind the general standard for determining whether AFDC plans are violative of the Social Security Act. It is by now well established that although participation in the AFDC program by any state is entirely voluntary, once a state has chosen to participate and has implemented its own AFDC plan "a state eligibility standard that excludes per-

11. Defendants urge that class relief should be found unnecessary, despite compliance with Rule 23 requirements, because the prospective effect of injunctive relief granted to the named plaintiffs prohibits the enforcement of a state statute and thus inures to the benefit of all proposed class members, citing *Galvan v. Levine,* 490 F.2d 1255 (2d Cir. 1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974).

However, in *Galvan v. Levine* denial of class certification was affirmed because the state not only made clear that it would be bound by an adverse judgment but in fact "withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy." 490 F.2d at 1261. Here there has been no assurance by the state that its welfare officials will apply the court's judgment to all similarly situated persons, and in fact there is some uncertainty as to whether it would do so. In a letter to the court dated Aug. 22, 1977, addressed in part to plaintiffs' motion for class certification, counsel for the State Commissioner asserted that "questions of fact remain as to the need for class relief *if* the State were to follow a final decision (*i. e.* as affirmed, if an appeal were taken) as a matter of stare decisis." [emphasis added]

sons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause" in the absence of clear Congressional authorization for such exclusion. *Townsend v. Swank*, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). *See Philbrook v. Goldgett*, 421 U.S. 707, 719, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Van-Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Burns v. Alcala*, 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); *King v. Smith, supra.* Pursuant to this general rule that a state's AFDC program is invalid if it restricts eligibility beyond federal requirements, the Court of Appeals for the Second Circuit has held that once a state has decided to enact an AFDC emergency assistance plan pursuant to 42 U.S.C. § 606(e), "it [is] bound to follow the eligibility conditions established by federal law", *Lynch v. Philbrook, supra*, 550 F.2d at 795, and "a state's definition of an emergency may not be more restrictive than that provided by the [Social Security] Act". *Hagans v. Berger*, 536 F.2d 525, 532 (2d Cir. 1976). *Accord, Mandley v. Trainor*, 523 F.2d 415 (7th Cir. 1975). Consequently, this court must determine whether the challenged sections of the May 1977 amendment to § 350-j of the New York Social Services Law unduly restrict the federal standards of eligibility for emergency assistance under 42 U.S.C. § 606(e).

### § 350–j(2)(c)—Denial of cash emergency assistance to applicants eligible for AFDC

In its provision for authorization of cash assistance, the amended state statute draws a restrictive distinction between applicants for emergency assistance who are eligible for AFDC, and those who are not. As to families receiving or eligible for AFDC, emergency assistance in the form of cash is automatically prohibited and emergency services alone are available. NYSSL § 350–j(2)(c) and (3), as amended. Applicants not receiving or eligible for AFDC, however, are entitled to emergency assistance in the form of either services *or* cash. This court concludes that this absolute and categorical denial of cash assistance solely to applicants receiving or eligible for AFDC is a state eligibility standard which subjects AFDC recipients to more restrictive conditions than those imposed on other emergency assistance applicants, including other public assistance recipients. This provision is therefore invalid as being inconsistent with and violative of the Social Security Act. *Lynch v. Philbrook*, 550 F.2d 793 (2d Cir. 1977).

In *Lynch v. Philbrook, supra*, the Second Circuit invalidated Vermont's emergency assistance eligibility conditions because they required families receiving AFDC to demonstrate that their emergency was due to one of several specified cases, a categorical requirement not imposed on families who were not receiving AFDC. As the Court made clear, "both the structure of the Act itself and its legislative history show that the E[mergency] A[ssistance] program was designed to cover, at a minimum, AFDC recipients." *Id.*, at 796. Since the added burden placed by the state on AFDC recipients narrowed the definition of emergency as to them alone, the state eligibility requirement was held to constitute a restrictive and invalid discrimination against the class of AFDC recipients. *Id.*, at 797.

The analysis of *Lynch* is equally applicable here, where the state has categorically precluded the availability of cash emergency assistance only in the cases of those families receiving or eligible for AFDC. This is an impermissible discrimination against AFDC families and directly contrary to Congressional intent. *Lynch v. Philbrook, supra*, 550 F.2d at 796–797. The disputed restriction is not merely a formal one, for as a practical matter denial of *cash* emergency assistance may amount to a denial of *any* emergency assistance. As the circumstances of plaintiff Selders make evident, the denial of cash assistance to an applicant may prevent his or her conversion of a food stamps voucher into negotiable food stamps. Consequently, the alternative offer by the state of a food stamp voucher

may represent a meaningless gesture which leaves the applicant with no assistance at all. Although the Social Security Act does leave the states with general discretion as to the form of assistance or payments to be made, 42 U.S.C. § 606(e)(1)(A); *see Williams v. Wohlgemuth*, 540 F.2d 163, 169 (3rd Cir. 1976); *Mandley v. Trainor*, 523 F.2d 415, 420 (7th Cir. 1975), it does not permit them to extend benefits to certain "needy families" while denying "such benefits for some on AFDC welfare who have the same emergency need." *Lynch v. Philbrook, supra*, 550 F.2d at 796. Since the classification under attack limits its automatic denial of emergency assistance in the form of cash only to those applicants eligible for AFDC, this court need not determine whether the state could permissibly deny cash emergency assistance to *all* families applying for it. It is sufficient to note that the denial of cash assistance to those receiving or eligible for AFDC discriminates against an applicant on the basis of a status that is irrelevant to his or her need and offends the legislative intent to assure emergency assistance for all needy families, whether or not AFDC eligible. *See Lynch v. Philbrook, supra*, 550 F.2d at 796; *Mandley v. Trainor, supra*, 523 F.2d at 421; *Ingerson v. Sharp*, 423 F.Supp. 139, 143–144 (D.Mass.1976).

### § 350–j(2)(e)—Denial of Emergency Assistance in All Cases of Loss, Theft or Mismanagement of a Public Assistance Grant

■ Plaintiffs Bacon, Goodwine and Parrish were all refused emergency assistance on the ground that the amended state statute mandates an automatic denial of emergency assistance in all cases where the emergency circumstances result from loss or theft of a public assistance grant. NYSSL § 350–j(2)(e), as amended. The court concludes that this provision constitutes an invalid restriction as to the type of emergency for which assistance has been provided under 42 U.S.C. § 606(e) and im-

permissibly burdens recipients of public assistance alone, thus violating the Social Security Act. No opinion is expressed concerning the validity of the provision of NYSSL § 350–j(2)(e) which precludes emergency assistance in cases of mismanagement of public assistance grants, since that provision is not presently in issue.[12]

■ As noted above, the Court of Appeals for the Second Circuit recognizes that "a state's definition of an emergency may not be more restrictive than that provided by the [Social Security] Act". *Hagans v. Berger*, 536 F.2d 525, 532 (2d Cir. 1976). It cannot be doubted that NYSSL § 350–j(2)(e), as amended, restricts the eligibility standards established by the federal statute through its automatic prohibition of emergency assistance to genuinely needy families whose need is caused by loss or theft of welfare assistance funds. It is plain from a reading of the 1977 amendment that applicants whose emergency circumstances were caused by loss or theft of funds other than public assistance moneys are not excluded from eligibility by § 350–j(2)(e). This plainly imposes a discriminatory restriction on public assistance recipients based on status, not need, and constricts the application of the emergency assistance eligibility provisions of the Social Security Act in violation of Congressional intent and the language of the Act. As stated above, the federal legislation does not allow the extension of benefits to select needy families while prohibiting "such benefits for some on [public] welfare who have the same emergency need." *Lynch v. Philbrook, supra*, 550 F.2d at 796.

In addition, it appears that welfare recipients whose emergency is occasioned by something other than loss or theft of their grant, *e. g.*, late mail delivery of an assistance check, or destruction of funds or goods by natural disaster, would be unaffected by NYSSL § 350–j(2)(e), as amended, and would be eligible for emergency assistance. This section's restriction addressed to the

---

**12.** None of the named plaintiffs was denied emergency assistance on the ground that her emergency situation resulted from the "mismanagement" of a regular public assistance grant, as provided for in § 350–j(2)(e), as amended. Consequently, none has standing to challenge that element of § 350–j(2)(e), and this court does not pass on its validity.

cause of the underlying emergency contributes to the invalidity of the provision, for it precludes emergency assistance in all cases of particular types of catastrophes (loss or theft of welfare payments) without concern for the existence of genuine and demonstrable need on the part of the applicant. In *Williams v. Wohlgemuth*, 540 F.2d 163 (3rd Cir. 1976), Pennsylvania regulations which restricted emergency assistance to cases of natural disaster and civil disorder were invalidated under the supremacy clause because they constituted "eligibility standards more confining than those contained in the federal statute." *Id.*, at 169. Similarly, Illinois provisions which conditioned eligibility for emergency assistance on narrowly limited types of crises (primarily involving loss of habitable shelter) were held to be improper restrictions of the eligibility requirements of 42 U.S.C. § 606(e) and thus void under the supremacy clause in *Mandley v. Trainor*, 523 F.2d 415 (7th Cir. 1975). *See also Burrell v. Norton*, 381 F.Supp. 339 (D.Conn.1974) (three-judge court; state regulations providing for emergency relief only in cases of natural disasters held unconstitutional as violative of the equal protection clause).

**13.** In *Hagans v. Berger*, 536 F.2d 525 (2d Cir. 1976), the Court observed in dictum that the emergency assistance provisions of 42 U.S.C. § 606(e) would not require a participating state to provide delinquent rent for the recipient's present abode in lieu of relocation to some other shelter such as a welfare hotel. *Id.* at 532. This observation, which addresses only the form of relief the state might properly provide in emergency situations, in no way contradicts this court's present holding that the state's absolute denial of *any* form of emergency assistance in situations resulting from loss or theft of a public assistance grant is an impermissible narrowing of the federal eligibility standards.

**14.** The Court of Appeals of New York State reached an identical conclusion in construing state regulations and state law in *Jones v. Berman*, 37 N.Y.2d 42, 371 N Y.S.2d 422, 332 N.E.2d 303 (1975), which was decided well before the 1977 amendment to § 350–j of the New York Social Security Law, at a time when the eligibility provisions of the state emergency assistance statute were substantially identical to those of the Social Security Act. *See* p. 1378, *supra*. The Court in *Jones* held invalid a regulation of the New York State Department of

The absolute prohibition established by NYSSL § 350–j(2)(e) plainly ignores the possibility that an individual applicant who is rendered ineligible by that statutory section due to his status or emergency may be in real and present danger of destitution. This court accordingly concludes that the state's blanket denial of all emergency assistance in every case involving the theft or loss of public assistance funds both discriminates against a protected class of applicants and improperly conditions eligibility on the nature of the claimed emergency. NYSSL § 350–j(2)(e), as amended, improperly narrows the federal statutory mandate to furnish "emergency assistance to needy families with children", 42 U.S.C. § 606(e), see *Lynch v. Philbrook, supra*, 550 F.2d at 795,[13] by automatically excluding from eligibility applicants whose destitution may be imminent and genuine and who thus are clearly eligible under the Social Security Act.[14]

### § 350–j(2)(f)—Denial of emergency assistance to replace or duplicate a recurring public assistance grant

The 1977 amendment to § 350–j also requires the categorical denial of emer-

Social Services which denied emergency assistance "when destitution is due to loss, theft or diversion of a grant already made." 18 N.Y.C. R.R. § 372.2(c) (1969) quoted in *Jones, supra*, 37 N.Y.2d at 52, 371 N.Y.S.2d at 428, 332 N.E.2d 303. This regulation was held to restrict the eligibility provisions of the *state* legislation because it required "the summary denial of assistance without regard to the honesty of the loss or the actual destitute circumstances of the people intended to be protected by the act". *Id.*, 37 N.Y.2d at 52–53, 371 N.Y.S.2d at 429, 332 N.E.2d at 308. The Court noted in dictum that the defective regulation thus added a requirement not existing under federal law, *id.*, at 53, 371 N.Y.S.2d 422, 429, 332 N.E.2d 303, 308, although the Court did not reach the issue of whether the regulation was invalid under federal law due to its conclusion that it violated state statutory eligibility conditions. The 1977 amendment to § 350–j may have cured the state law deficiency found in *Jones v. Berman*, but its legitimacy under the Social Security Act is an issue of federal law and, as held *supra*, the statute must be declared invalid.

gency assistance when requested "[to] replace or duplicate a public assistance grant already made under section one hundred thirty-one-a" of the New York Social Services Law.[15] § 350–j(2)(f), as amended. For essentially the same reasons that §§ 350–j(2)(c) and the provisions relating to loss or theft in 350–j(2)(e) of the Social Services Law, as amended, have been held invalid above, this court holds that § 350–j(2)(f) constitutes an unauthorized and improper limitation on eligibility for emergency assistance by the state, and therefore cannot stand.

As does each of the other invalidated provisions of the 1977 amendment to § 350–j, this subsection mechanically and without exception disqualifies an applicant from consideration for full emergency assistance due to his or her status as a recipient of public assistance and without reference to the existence of genuine and immediate need. It appears to be applicable in all cases to which § 350–j(2)(e) would apply as discussed above, and may be used interchangeably with it.[16] NYSSL § 350–j(2)(f), as amended, is thus simply another statutory means for effecting a blanket denial of emergency relief to children already receiving public assistance when their imminent destitution is caused by the loss, or requires the replacement, of publicly furnished monies. As was noted in *Lynch v. Philbrook, supra,* 550 F.2d at 795–796, to automatically foreclose emergency relief to any welfare recipient in this manner "seems an odd way of carrying out the 1968 congressional mandate of providing 'emergency assistance to needy families with children.'"

In summary, the fatal defect in each of the challenged provisions of NYSSL § 350–j, as amended, is its automatic and categorical exclusion of AFDC or other public assistance beneficiaries from eligibility for full and unrestricted emergency assistance. The flat declaration of ineligibility based on an applicant's status as AFDC or other public welfare recipient means that such applicants, without exception, cannot even be considered for emergency assistance. These applicants are automatically disqualified without regard to the particular factual circumstances and *bona fides* of each application, including the honesty of the application, the actual gravity of the claimed emergency, or the actual imminence of the claimed destitution. The statute leaves no room for case-by-case review of individual applications to distinguish the improper claims from the deserving. Although New York plainly has a legitimate interest in insuring that its public assistance funds are not abused by fraudulent applications for emergency assistance, it may not legitimately protect that interest by automatically prohibiting such assistance to an entire class of needy applicants who are eligible for consideration under federal law. This categorical disqualification must inevitably brush aside genuinely deserving and federally eligible applicants in its broad sweep. As discussed at length above, such a restriction impermissibly narrows the eligibility standards established by 42 U.S.C. § 606(e) and consequently is invalid under the supremacy clause of the constitution.

In so holding, it should be made clear that this court makes no determination concerning the individual merits of any particular applicant for emergency assistance.[17] The court here simply declares that NYSSL §§ 350–j(2)(c), 350–j(2)(e) to the extent that it precludes eligibility for emergency assistance in cases of loss or theft of a public

---

**15.** NYSSL Section 131–a establishes the state's standard of need for basic monthly public assistance grants and allowances, and sets the level of those payments. *See Baumes v. Lavine,* 38 N.Y.2d 296, 300–302, 379 N.Y.S.2d 760, 763–765, 342 N.E.2d 543 (1975).

**16.** For example, the denials received by plaintiffs Bacon and Goodwine from Westchester Social Services expressly referred both to the "loss or theft" provision of NYSSL § 350–

j(2)(e) and to the "duplication of public assistance" provision of 350–j(2)(f). *See* footnotes 2 and 3, *supra.*

**17.** As earlier noted, the temporary restraining orders previously issued in this case merely required that defendants consider the merits of each plaintiff's application for emergency assistance without reference to the challenged amendment to NYSSL § 350–j.

**1388**

assistance grant,[18] and 350–j(2)(f) are inconsistent with and violative of the Social Security Act, 42 U.S.C. § 606(e). Accordingly, they are declared to be invalid and the defendants and their successors in office shall be enjoined from enforcing them.

Settle order on five days' notice.

18. See footnote 12, *supra.*